STATE OF CONNECTICUT *v.* ANTHONY SEALY
(13374)

HEALEY, SHEA, CALLAHAN, COVELLO and HULL, Js.

Argued June 8—decision released August 23, 1988

*Robert L. Genuario,* for the appellant (defendant).

*Mary H. Lesser,* deputy assistant state's attorney, with whom, on the brief, was *David Gold,* assistant state's attorney, for the appellee (state).

COVELLO, J. Following a trial by jury, the defendant, Anthony Sealy, was convicted of the crimes of carrying a dangerous weapon in violation of General Statutes § 53-206 (a), and threatening in violation of General Statutes § 53a-62 (a) (2). The defendant was sentenced on the weapons conviction to three years imprisonment, execution suspended after one year, to be followed by three years probation. On the threatening conviction he was sentenced to one year imprisonment. The sentences were ordered to run concurrently.

On appeal the defendant claims that the trial court erred in: (1) instructing the jury that General Statutes § 53-206 (a) would be violated if it found that the defendant had the weapon outside of his apartment in the common area; (2) denying the defendant's motion for judgment of acquittal on the dangerous weapon charge; and (3) denying the defendant's motion for judgment of acquittal on the threatening charge. We find no error.

The jury could reasonably have found the following: In August, 1986, the defendant lived at 768 Dixwell Avenue, New Haven. That dwelling consisted of three floors. A barbershop occupied the ground floor. The complaining witness, Louann Ford, occupied the only apartment on the second floor, and the defendant occupied the only apartment on the third floor. Access to the two apartments from the street was through a locked common front door and stairway, separated from the barbershop. Each tenant possessed a key to the common door.

On August 30, 1986, Ford answered a knock on her apartment door and found the defendant standing outside her door on the second floor landing holding a butcher knife over his head. The defendant complained that someone had taken money from his apartment and he wanted it back. The defendant also said that he would "burn the house down" and people will die. Ford closed her door and at some point the defendant stuck the knife into the door. Ford left the building through the back door and called the police.

A responding police officer entered the building and when he was approximately halfway up the stairway between the second and third floors, the defendant came out of the third floor apartment screaming and carrying a butcher knife. The defendant came down two steps on the stairway and raised the butcher knife over his head. At this point the officer, now four to five steps away from the defendant, drew his gun and ordered the defendant to put down the knife. After the officer repeated this order several more times, the defendant finally put aside the knife.

The knife was found to have a four and one-half inch blade. The defendant did not have the necessary permit to carry such a knife.

I

The defendant first claims that the trial court erred in instructing the jury that § 53-206 (a) would be violated if the defendant had the knife outside his apartment in a common area.[1] We conclude that the stairway and landing in this multi-unit dwelling are not part of the defendant's residence or abode and, therefore, the trial court did not err in instructing the jury that § 53-206 would be violated if it found the defendant "had the knife outside of his apartment in a common area."

Section § 53-206 (a) provides in relevant part: "Any person who carries upon his person any . . . knife the edged portion of the blade of which is four inches or over in length . . . unless such person has been granted a written permit . . . authorizing such person to carry such weapon . . . shall be fined not more than five hundred dollars or imprisoned not more than three years or both. . . . The provisions of this subsection shall not apply to . . . any person who is found with any such weapon or implement concealed upon his person while lawfully removing his household goods or effects from one place to another, or from one residence to another, nor to any person while actually and peaceably engaged in carrying any such weapon or implement from his place of abode or business to a place or person where or by whom such weapon or implement is to be repaired, or while actually and peaceably returning to his place of abode or business with such weapon

---

[1] The trial court charged the jury in pertinent part: "Now, before you could find the defendant guilty of this offense, it must be found that it has been proven beyond a reasonable doubt that the defendant had the knife outside of his apartment in a common area. It would not be a violation of the law for the defendant to have the knife on his person within his place of abode or residence. The law would be violated only if you find that the knife is outside of his residence in a common hallway."

or implement after the same has been repaired." Implicit in this provision is an exception for carrying a weapon in an individual's residence or abode, and a recognition of the protected zone of privacy in his or her dwelling.

The defendant claims that he had exclusive control over the landing and stairway between the second and third floor apartments.[2] He contends that his exclusive use and control over this area rendered the landing and stairway part of his residence and, therefore, his carrying a weapon in this area was exempt from the operation of § 53-206 (a). The success of this claim turns upon whether a common stairway and landing is part of a residence or abode.

In *State* v. *Brown,* 198 Conn. 348, 357, 503 A.2d 566 (1986), this court stated that "an individual tenant may have a constitutionally cognizable expectation of privacy in areas where his use is exclusive, that is, where he has the legal right to control access and to exclude others." *United States* v. *Holland,* 755 F.2d 253, 255–56 (2d Cir. 1985) (legitimate expectation of privacy of apartment tenant exists only in an area subject to the tenant's exclusive control); *United States* v. *Arboleda,* 633 F.2d 985, 991 (2d Cir. 1980) (apartment dweller's legitimate privacy expectation exists in area where tenant has the right to exclude others); *State* v. *Ragsdale,* 381 So. 2d 492, 497 (La. 1980) (apartment dweller had reasonable expectation of privacy in completely enclosed patio outside his apartment unit); *Com-*

---

[2] General Statutes § 53-206 (a) does not expressly except from its terms the carrying of a dangerous weapon in one's dwelling or abode. This, however, is an implied exception. See General Statutes § 29-35 (allows the carrying of pistols or revolvers without a permit in one's dwelling house or place of business). Section 29-35 provides in pertinent part: "No person shall carry any pistol or revolver upon his person, except when such person is within his dwelling house or place of business, without a permit to carry the same . . . ."

*monwealth* v. *Hall,* 366 Mass. 790, 794–95, 323 N.E.2d 319 (1975) (tenant has expectation of privacy in areas over which he can control access).

In this case the defendant did not have the exclusive use of the area between the second and third floor apartments, as he did not have the legal right to control access and to exclude others. At any time there might be deliverypersons, the landlord, his or her agents, visitors, or residents of the other apartment in that common hallway and the defendant could not lawfully have excluded them from the premises.[3] In other words, although the defendant may have been the principal user of the third floor landing and stairway, other individuals, however infrequent their use, also had a right to use that area. *State* v. *Reddick,* 207 Conn. 323, 334 n.5, 541 A.2d 1209 (1988). This being the case, we conclude that the stairway and landing which led to the defendant's apartment were not part of his residence or abode.[4] Therefore, the trial court did not err in instructing the jury that § 53-206 (a) would be violated if the defendant was carrying the knife in a common hallway.

[3] "[A] common hallway in a two-family house is the means of ingress and egress to both apartments for visitors, deliverymen and tradesmen, among others, where one might reasonably expect to find an assortment of individuals." *State* v. *Reddick,* 207 Conn. 323, 334 n.5, 541 A.2d 1209 (1988).

[4] Other jurisdictions have addressed this issue regarding statutes similar to General Statutes § 53-206 (a). Our conclusion is supported by those cases. See *White* v. *United States,* 283 A.2d 21 (D.C. 1971) (floor above that on which the defendant resided is not part of his "dwelling house" within the statutory exemptions); *Brant* v. *State,* 349 So. 2d 674 (Fla. 1977) (hallway outside the hotel room, in which the defendant legally resided, is not part of the defendant's "home" or "apartment" within statutory exemption); *State* v. *Davidson,* 217 N.W.2d 630 (Iowa 1974) (hallway adjacent to the defendant's apartment was not a "dwelling" where the defendant could lawfully carry gun); *Commonwealth* v. *Seay,* 383 N.E.2d 828 (Mass. 1978) (the foyer and stairway area of apartment building is not within statutory exemption); *People* v. *Powell,* 54 N.Y.2d 524, 430 N.E.2d 1285, 446 N.Y.S.2d 232 (1981) (no right of privacy in common hallway outside the residence of a limited group).

## II

The defendant next claims that the trial court erred in denying his motion for judgment of acquittal on the dangerous weapon charge. The defendant argues that there was insufficient evidence to find that he carried the knife anywhere other than in the stairway or landing of the apartment building in which he lived. The defendant relies on the assumption that this area is part of his residence and, therefore, not subject to § 53-206 (a). Because of our conclusion that the hallway in question was not part of the defendant's home, we find no error on this issue.

## III

Finally, the defendant claims that there was insufficient evidence at trial to support a verdict of guilty of threatening in violation of General Statutes § 53a-62.[5] He argues that there was no evidence that he had the requisite intent to terrorize the victim.

In examining a claim of insufficient evidence, "[w]e first review the evidence presented at the trial, construing it in the light most favorable to sustaining the jury's verdict. We then determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt." *State* v. *Sinclair,* 197 Conn. 574, 576, 500 A.2d 539 (1985). We

---

[5] General Statutes § 53a-62 provides in part: "(a) A person is guilty of threatening when: (1) By physical threat, he intentionally places or attempts to place another person in fear of imminent serious physical injury, or (2) he threatens to commit any crime of violence with the intent to terrorize another, to cause evacuation of a building, place of assembly, or facility of public transportation, or otherwise to cause serious public inconvenience, or (3) he threatens to commit such crime in reckless disregard of the risk of causing such terror or inconvenience."

conclude that the evidence presented at trial was sufficient to find the defendant guilty of threatening.

Generally, intent can be proved only by circumstantial evidence. *State* v. *McDonough,* 205 Conn. 352, 358–59, 533 A.2d 857 (1987) " ' "Intent may be, and usually is, inferred from conduct. . . ." ' " *State* v. *Morrill,* 193 Conn. 602, 609, 478 A.2d 994 (1984), quoting *State* v. *Sober,* 166 Conn. 81, 92, 347 A.2d 61 (1974). The jury could reasonably have found that the defendant held a butcher knife over his head when he accosted Ford at her front door, and, ultimately stuck the knife into the door. Further, the defendant stated that he would "burn the house down" and that people will die. A jury could reasonably infer from these circumstances that the defendant intended to threaten Ford. "[W]hether such an inference should be drawn is properly a question for the jury to decide." *State* v. *Morrill,* supra.

Viewed in the light most favorable to upholding the jury's verdict, we conclude that the evidence of the defendant's conduct presented at trial was sufficient to warrant an inference of intent and to support a finding of guilty.

There is no error.

In this opinion the other justices concurred.