STATE OF CONNECTICUT *v.* SEAN RAMIREZ
(AC 27707)

Bishop, Lavine and McDonald, Js.

Argued November 28, 2007—officially released April 15, 2008

*Jodi Zils Gagne,* special public defender, for the appellant (defendant).

*Kathryn Ward Bare,* deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Brian J. Leslie,* assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, Sean Ramirez, appeals from the judgment of conviction, following a jury trial, of assault in the second degree in violation of General Statutes § 53a-60 (a) (2) and threatening in the second degree in violation of General Statutes § 53a-62 (a) (1). On appeal, the defendant claims that (1) the trial court improperly denied his posttrial motion for a judgment of acquittal, (2) the court improperly instructed the jury on self-defense and (3) the evidence was insufficient to sustain his conviction of assault in the second degree and threatening in the second degree. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The victim[1] was driving on College Street in New Haven during the afternoon of October 29, 2003, when he noticed a black sport utility vehicle, driven by the defendant, weaving erratically. Both the victim and the defendant stopped their vehicles for a red traffic signal in adjacent lanes at the intersection of College Street and Chapel Street. When the traffic signal turned green, the defendant accelerated rapidly and switched into the victim's lane, cutting him off. In response, the victim moved his car into the neighboring lane, but the defendant also switched lanes, cutting the victim off a second time. The victim was forced to brake to avoid a collision and, consequently, flashed his high beam headlights to alert the defendant to his presence. The defendant then braked abruptly, forcing the victim also to brake swiftly to avoid hitting the defendant's car. After the defendant resumed traveling forward, he changed lanes and slowed his vehicle. When the victim drove past him, the defendant immediately switched back into the victim's lane. The defendant twice accelerated toward the victim's car as if intending to ram it, slowing down just before contact. The victim, concerned for his safety, changed lanes two more times to avoid the defendant. When the victim came to a stop at a red traffic signal at the intersection of College Street and North Frontage Road in the center lane, the defendant drove abreast of him in the right lane. Through his closed windows, the victim could see that the defendant was angrily yelling and gesticulating at him.

The defendant then exited his car, ran to the victim's driver side window and began pounding his fists against the glass. The victim, afraid that the defendant would hurt him, reached between the front seats and into the back of his car and grabbed his baseball bat to protect

---

[1] We decline to identify the victim in the interest of protecting his privacy. See *State* v. *Epps*, 105 Conn. App. 84, 86 n.2, 936 A.2d 701 (2007), cert. denied, 286 Conn. 903, 943 A.2d 1102 (2008).

himself. Just after the victim got the bat, the defendant punched his fist through the driver's side window, reached into the victim's car and wrenched the bat out of his hands. The defendant stated: "I'm glad you gave me this bat because now I'm going to beat the hell out of you and kill you with it." The defendant then began hitting the victim, while the victim tried to deflect the blows with his feet. After striking the victim about half a dozen times, the defendant ran back to his car, reversed quickly down College Street and drove away.

The defendant was stopped in his vehicle by the police approximately half an hour later. The defendant's right hand was lacerated and swollen, and he explained that he had just been in an altercation with the victim on College Street. Additionally, the victim's baseball bat was found inside the defendant's car.

The defendant was ultimately arrested and charged with attempt to commit assault in the first degree, assault in the second degree, threatening in the second degree and carrying a dangerous weapon.[2] At trial, the defendant testified and admitted to hitting the victim with the baseball bat and punching him in the face. The defendant claimed, however, that he was acting in self-defense. The jury found the defendant guilty of assault in the second degree and threatening in the second degree. He was acquitted of attempt to commit assault in the first degree, carrying a dangerous weapon and failure to appear in the first degree. On March 8, 2004, the defendant filed a motion for a judgment of acquittal notwithstanding the verdict in which he sought relief on the ground that the verdict was both legally and factually inconsistent. On March 20, 2006, the court denied the defendant's motion. The court sentenced the

---

[2] The defendant was subsequently charged with failure to appear in the first degree in violation of General Statutes § 53a-172 when he did not appear in court on June 1, 2004.

defendant to six years incarceration, execution suspended after four years, and two years of probation. This appeal followed.

## I

The defendant first claims that the court improperly denied his motion for a judgment of acquittal because the jury's guilty verdict on the charge of assault is legally and factually inconsistent with the jury's finding of not guilty on the charge of carrying a dangerous weapon.[3] The defendant argues that assault with a dangerous instrument or deadly weapon required the state to prove that he used a dangerous or deadly weapon in the commission of the assault and that the jury's finding of not guilty on the charge of carrying a dangerous or deadly weapon or instrument can not be factually or legally harmonized with the assault conviction. We disagree.

Preliminarily, we note that "[t]he resolution of a claim of inconsistent verdicts presents a question of law. . . . Our review is therefore plenary." (Internal quotation marks omitted.) *State* v. *Mourning*, 104 Conn. App. 262, 269, 934 A.2d 263, cert. denied, 285 Conn. 903, 938 A.2d 594 (2007).

We first consider the defendant's claim that the verdict was legally inconsistent. Generally, a legal inconsistency arises when an essential element for one conviction negates an essential element for another

---

[3] General Statutes § 53-206 provides in relevant part: "(a) Any person who carries upon his or her person any BB. gun, blackjack, metal or brass knuckles, or any dirk knife, or any switch knife, or any knife having an automatic spring release device by which a blade is released from the handle, having a blade of over one and one-half inches in length, or stiletto, or any knife the edged portion of the blade of which is four inches or over in length, any police baton or nightstick, or any martial arts weapon or electronic defense weapon, as defined in section 53a-3, *or any other dangerous or deadly weapon or instrument,* shall be fined not more than five hundred dollars or imprisoned not more than three years or both. . . ." (Emphasis added.)

conviction. "[W]here the inconsistent verdicts claim involves a simultaneous conviction and acquittal on different offenses [however], the court, in testing the verdict of guilty for inconsistency as a matter of law, is necessarily limited to an examination of the offense charged in the information and the verdict rendered thereon without regard to what evidence the jury had for consideration. . . . If the offenses charged contain different elements, then a conviction of one offense is not inconsistent on its face with an acquittal of the other." (Citation omitted; internal quotation marks omitted.) *State* v. *DeCaro*, 252 Conn. 229, 244, 745 A.2d 800 (2000).

A conviction of assault in the second degree in violation of § 53a-60 (a) (2) requires that an offender intend to cause physical injury to another person and that he actually cause such injury by means of a deadly weapon or dangerous instrument. No such requirement of intent to cause physical injury or causing such injury is contained in General Statutes § 53-206, which prohibits the carrying of a dangerous or deadly weapon or instrument.

Also, for a defendant to be found guilty of carrying a dangerous weapon under § 53-206, the state must prove that the defendant carried on his person a dangerous or deadly weapon or instrument. As the court charged in its instructions to the jury: "[C]arry means what it means in its everyday sense, including any method of carrying, which renders the weapon or instrument readily acceptable and available for use irrespective of whether the person moves from place to place while having the weapon or instrument rather [than] in [one's] possession. It also means to bear, to bear about, sustain, transport, remove or convey. Carry is further defined as to have or bear upon or about one's person as a watch or weapon . . . . A person does not have to move in order to carry an object." The court's charge to the jury has an adequate foundation

in decisional law as well as in common usage. See *State v. Hopes*, 26 Conn. App. 367, 374, 602 A.2d 23, cert. denied, 221 Conn. 915, 603 A.2d 405 (1992); Black's Law Dictionary (5th Ed. 1979) (defining carry as, "[t]o bear, bear about, sustain, transport, remove, or convey . . . . To have or bear upon or about one's person, as a watch or weapon"); Ballentine's Law Dictionary (3d Ed. 1969) (defining carrying a weapon as "[a]ny method of carrying which renders the weapon readily accessible and available for use, irrespective of whether the person moves from place to place while having the weapon in possession"). Thus, carrying a dangerous instrument on one's person and assaulting someone by means of a dangerous instrument are not identical concepts, as use does not necessitate carrying. Consequently, because the crimes of assault in the second degree and carrying a dangerous weapon contain different elements, a conviction of one is not legally inconsistent with an acquittal of the other.

The defendant also claims that the verdict was factually inconsistent. The defendant argues that because the jury found him not guilty of carrying a dangerous weapon, in this case, a baseball bat, the jury's verdict of guilty of assault in the second degree with this same baseball bat is illogical.

The law is well settled that a factually inconsistent verdict will not be overturned on appeal. *State v. DeCaro*, supra, 252 Conn. 242. "The law permits inconsistent verdicts because of the recognition that jury deliberations necessarily involve negotiation and compromise. . . . [I]nconsistency of the verdicts is immaterial. . . . As Justice Holmes long ago observed in the case of *Dunn* v. *United States*, 284 U.S. 390, 393–94, 52 S. Ct. 189, 76 L. Ed. 356 (1932): The most that can be said in such cases . . . is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not

show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity. . . . That the verdict may have been the result of compromise, or a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters." (Internal quotation marks omitted.) *State* v. *Knight,* 266 Conn. 658, 670, 835 A.2d 47 (2003).

Here, it is quite possible that the jury chose to exercise leniency by finding the defendant not guilty of the charge of carrying a dangerous weapon while finding him guilty of assault. If so, the defendant was given the benefit of his acquittal on the counts on which he was acquitted, and it is neither irrational nor illogical to require him to accept the burden of conviction on the counts on which the jury found him guilty. See *State* v. *Cassidy,* 3 Conn. App. 374, 390, 489 A.2d 386, cert. denied, 196 Conn. 803, 492 A.2d 1239 (1985), quoting *United States* v. *Powell,* 469 U.S. 57, 69, 105 S. Ct. 471, 83 L. Ed. 2d 461 (1984). Therefore, because it is the jury's sole province to determine the facts, we decline to review the defendant's claim of factual inconsistency.

II

The defendant also claims that the court improperly instructed the jury that he had a duty to retreat before he could claim that he acted in self-defense. We disagree.

"An improper instruction on a defense, like an improper instruction on an element of an offense, is of constitutional dimension." (Internal quotation marks omitted.) *State* v. *Singleton,* 97 Conn. App. 679, 688, 905 A.2d 725, cert. granted on other grounds, 280 Conn. 949, 912 A.2d 484 (2006). "The standard of review for constitutional claims of improper jury instructions is well settled. In determining whether it was . . . reasonably possible that the jury was misled by the trial

court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding [it] to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied . . . is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Russell*, 101 Conn. App. 298, 330–31, 922 A.2d 191, cert. denied, 284 Conn. 910, 931 A.2d 934 (2007).

The relevant section of the court's instructions to the jury states: "[You may also find that] the defendant's use of force was not justified if he was the initial aggressor and did not adequately retreat. If you find that the defendant was the initial aggressor, the defendant's use of force may still be justified if he withdrew from the encounter and made it clear to the other person, [the victim], that he was retreating from the use of force.

"That is, if the defendant was the initial aggressor, his use of physical force on [the victim] was justified if he withdrew from the encounter and effectively communicated to [the victim] his intent to withdraw, but [the victim], notwithstanding, continued the struggle or threatened the use of physical force. . . .

"Therefore, even if the state has proven the elements of the crimes alleged in the first four counts of the information, you will still find the defendant not guilty on those first four counts, unless you find [that] the state has proven beyond a reasonable doubt . . . [that]

the defendant was the initial aggressor and did not adequately retreat."

The defendant argues that the court's use of the word "retreat" rather than "withdraw," as suggested by the defendant, improperly instructed the jury that he had a duty to retreat prior to using nondeadly force in self-defense. Although it is true that the duty to retreat is applicable only when a defendant uses deadly force in self-defense, our review of the record reveals that it was not reasonably possible that the court's instructions misled the jury.

When the court instructed the jury on self-defense, the word retreat was always prefaced in the same sentence by the term initial aggressor. This indicates that the court used the word retreat only when instructing the jury about the initial aggressor exception to self-defense. The court's use of the word retreat did not invoke the legal doctrine of the duty to retreat but rather was used synonymously with the word withdraw. Furthermore, the court never instructed the jury as to the use of deadly force in self-defense. It would have, therefore, been a leap for the jury to have considered the duty to retreat exception to the use of deadly force. Finally, the court's instructions were taken almost verbatim from the manual on selected criminal jury instructions for the state; see J. Pellegrino, Connecticut Selected Jury Instructions: Criminal (3d Ed. 2001) § 2.39, p. 111;[4] and from the exact language of the self-defense statute. See General Statutes § 53a-19 (c).[5] The court therefore properly instructed the jury.

[4] See J. Pellegrino, supra, § 2.39, which provides in relevant part: "You must find that the use of physical force was not justified if the state proves beyond a reasonable doubt that . . . [t]he defendant was the initial aggressor and did not adequately retreat. If you find that the defendant was the initial aggressor, the defendant's use of force may still be justified if he withdrew from the encounter, and made it clear to the other person that he was retreating from the use of force."

[5] General Statutes § 53a-19 (c) provides in relevant part that "a person is not justified in using physical force when . . . he is the initial aggressor,

## III

Finally, the defendant claims that there was insufficient evidence to conclude beyond a reasonable doubt that he assaulted and threatened the victim. Though the defendant failed to preserve this claim, we review it as if it were preserved. "[A]ny defendant found guilty on the basis of insufficient evidence has been deprived of a constitutional right, and would therefore necessarily meet the four prongs of [*State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989)]. . . . [N]o practical reason exists to engage in a *Golding* analysis of a sufficiency of the evidence claim . . . ." (Internal quotation marks omitted.) *State* v. *Hicks*, 101 Conn. App. 16, 20–21, 919 A.2d 1052 (2007).

"The standard of review we apply to a claim of insufficient evidence is well established. In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider

except that his use of physical force upon another person under such circumstances is justifiable if he withdraws from the encounter and effectively communicates to such other person his intent to do so, but such other person notwithstanding continues or threatens the use of physical force . . . ."

it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . .

"Finally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [finder of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Calabrese*, 279 Conn. 393, 402–403, 902 A.2d 1044 (2006).

## A

The defendant argues that there was insufficient evidence to prove that he committed assault in the second degree in violation of § 53a-60 (a) (2). Specifically, he asserts that the state failed to prove that he had the necessary intent to cause physical injury and that he actually caused physical injury to the victim.

To prove the defendant guilty of assault in the second degree, the state was required to prove beyond a reasonable doubt that (1) the defendant intended to cause physical injury to another person, (2) he did in fact cause injury to such person and (3) he did so by means of a dangerous instrument. General Statutes § 53a-60 (a) (2); *State* v. *Bosse*, 99 Conn. App. 675, 678, 915 A.2d 932, 282 Conn. 906, 920 A.2d 310 (2007).

"It is well established that the question of intent is purely a question of fact. . . . Intent may be, and usually is, inferred from the defendant's verbal or physical conduct. . . . Intent may also be inferred from the surrounding circumstances. . . . The use of inferences based on circumstantial evidence is necessary because direct evidence of the accused's state of mind is rarely available. . . . Intent may be gleaned from circumstantial evidence such as the type of weapon used, the manner in which it was used, the type of wound inflicted and the events leading up to and immediately following the incident. . . . Furthermore, it is a permissible, albeit not a necessary or mandatory, inference that a defendant intended the natural consequences of his voluntary conduct." (Internal quotation marks omitted.) *State* v. *Pauling*, 102 Conn. App. 556, 567, 925 A.2d 1200, cert. denied, 284 Conn. 924, 933 A.2d 727 (2007).

Here, the jury reasonably could have concluded that the defendant intended to injure the victim physically by crediting the victim's testimony that the defendant cut off the victim multiple times and nearly rear-ended his vehicle twice; that he pounded on the victim's car window until it shattered; that he wrestled a baseball bat from the victim and told him he was going to beat him and that he struck the victim with the bat multiples times.

With respect to whether the defendant caused physical injury to the victim sufficient to sustain the conviction, General Statutes § 53a-3 (3) defines a physical

injury as an impairment of physical condition or pain. The victim testified that bruises developed on his calves as a result of the defendant's blows. Accordingly, the state presented sufficient evidence to sustain the defendant's conviction of assault in the second degree.

## B

The defendant also challenges the sufficiency of the evidence for his conviction of threatening in the second degree. To prove the defendant guilty of threatening in the second degree, the state was required to prove beyond a reasonable doubt that (1) the defendant intended to place the victim in fear of imminent serious physical injury through (2) a physical threat. General Statutes § 53a-62 (a).

The defendant asserts that the jury improperly credited his alleged uncorroborated statement, "I'm glad you gave me this bat because now I'm going to beat the hell out of you and kill you with it." The defendant argues that his testimony of self-defense was more consistent and therefore more credible than the victim's testimony. We are not persuaded.

The jury reasonably could have concluded that the defendant intended to threaten the victim and did threaten him on the basis of the testimony at trial that the defendant ran out of his car screaming and gesturing at the victim, pounded on the victim's window, eventually breaking the glass, reached through the broken window, grabbed the baseball bat and threatened to beat and kill the victim. The victim testified that he felt very concerned for his safety several times during the incident.

The defendant's focus on the uncorroborated threatening statement ignores the fact that the jury might have found much of his conduct during the altercation threatening. Moreover, though the defendant argues

that his testimony was more credible and consistent than the victim's testimony, the jury is solely responsible for determining the credibility of witnesses. See *State* v. *Mungroo*, 104 Conn. App. 668, 673, 935 A.2d 229 (2007), cert. denied, 285 Conn. 908, 942 A.2d 415 (2008). On the basis of the evidence presented at trial, we conclude that the evidence was sufficient to support the jury's verdict.

The judgment is affirmed.

In this opinion the other judges concurred.