STATE OF CONNECTICUT *v.* ANDRE CAMPBELL
(AC 29794)

Gruendel, Lavine and Peters, Js.

---

Argued March 11—officially released August 11, 2009

*Lisa J. Steele*, special public defender, for the appellant (defendant).

*Adam E. Mattei*, special deputy assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Joseph T. Corradino*, senior assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The defendant, Andre Campbell, appeals from the judgment of conviction, rendered after a jury trial, of carrying a dangerous weapon in violation of General Statutes § 53-206 (a). On appeal, the defendant claims that the trial court abused its discretion by improperly rejecting his request to instruct the jury that it might find that his college dormitory was his residence or place of abode. The defendant also claims

that the court wrongfully usurped the jury's fact-finding function by deciding that the common hallway in the college dormitory was not part of the defendant's residence or place of abode.[1] We affirm the judgment of the trial court.

The jury reasonably could have found the following relevant facts. On the evening of January 31, 2006, the defendant was a freshman at the University of Bridgeport. He lived on the sixth floor of Bodine Hall. In response to several violent incidents on campus, the defendant regularly carried a switchblade knife.

The defendant went to Kyle Boucher's room, where several friends were "hanging out." The defendant made a joke at Boucher's expense, and Boucher, angered by the comment, asked the defendant not to be disrespectful of him and to leave his room. The defendant did not think Boucher was serious and did not leave, but when Boucher asked him again, the defendant gathered his possessions and began to exit.

As the defendant was leaving the room, Boucher pushed him into the hallway. Boucher then threw a pretend punch at the defendant, and the defendant, concerned with Boucher's sudden change in demeanor, responded by drawing his switchblade knife. The two individuals argued, and a physical altercation ensued in the hallway. During the fight, the defendant stabbed Boucher four times. Eventually, other students entered the hallway and broke up the fight. The defendant was visibly upset after the fight and attempted to get help for Boucher. When the police arrived, the defendant

---

[1] Specifically, with regard to the second claim, the defendant contends that the court violated his constitutional right to have a jury determine his guilt or innocence by instructing the jury that the hallway in which the jury concluded that he lawfully defended himself was not part of his residence or place of abode. This claim is subsumed by the primary claim and, thus, is not analyzed independently.

cooperated with them, gave them his knife and later gave a statement of the events that took place.

The defendant subsequently was charged with assault in the first degree in violation of General Statutes § 53a-59 (a) (1) and carrying a dangerous weapon in violation of § 53-206 (a). Following a jury trial, the defendant was found not guilty of assault in the first degree and the lesser included offenses. The defendant was found guilty of carrying a dangerous weapon and was sentenced to three years imprisonment, execution suspended, and five years of probation with special conditions. This appeal followed. Additional facts will be set forth as necessary.

The defendant claims that the court abused its discretion in refusing to give a requested jury instruction regarding the residence or place of abode exception to § 53-206.[2] Specifically, he claims that the jury should have had the opportunity to decide the parameters of the defendant's "residence or place of abode." By defining the terms "residence or place of abode" in its

---

[2] General Statutes § 53-206 provides in relevant part: "(a) Any person who carries upon his or her person . . . any knife having an automatic spring release device by which a blade is released from the handle . . . shall be fined not more than five hundred dollars or imprisoned not more than three years or both. . . .

"(b) The provisions of this section shall not apply to . . . (3) the carrying of a knife, the edged portion of the blade of which is four inches or over in length, by . . . (D) any person who is found with any such knife concealed upon one's person while lawfully removing such person's household goods or effects from one place to another, or from one residence to another, (E) any person while actually and peaceably engaged in carrying any such knife from such person's place of abode or business to a place or person where or by whom such knife is to be repaired, or while actually and peaceably returning to such person's place of abode or business with such knife after the same has been repaired . . . ."

Our Supreme Court has interpreted those exceptions to include an implicit exception for "carrying a weapon in an individual's residence or abode, and a recognition of the protected zone of privacy in his or her dwelling." *State v. Sealy*, 208 Conn. 689, 693, 546 A.2d 271 (1988).

instructions to the jury, the defendant claims, the court usurped the jury's fact-finding function. We disagree.

Following the state's presentation of evidence, the defendant moved for a judgment of acquittal, arguing that the state had proven only that he carried his knife within Bodine Hall, which he claims was his residence or place of abode. The state opposed the motion, reasoning that dormitory hallways are common areas, not within the purview of the residence or place of abode exception. The court denied the defendant's motion, relying on our Supreme Court's decision in *State* v. *Sealy*, 208 Conn. 689, 546 A.2d 271 (1988).

After the defendant presented his case, he filed a supplemental request to charge. He requested that with regard to the residence or place of abode exception, the court charge the jury as follows: "The second element is that the defendant was outside his residence or place of abode. It is not a violation of the law for one to have a switchblade knife within his abode or residence. You have heard testimony and will review exhibits relating to what has been referred to as Bodine Hall at the University of Bridgeport. It is therefore necessary for you to determine if the defendant possessed the knife outside of his residence or place of abode."

The court did not employ the defendant's requested charge but, instead, instructed the jury, in relevant part, as follows: "And the state further accuses [the defendant of] the crime of carrying a dangerous weapon and charges [that] in the county of Fairfield, at the city of Bridgeport, on or about [January 31], 2006, at 80 University Avenue within said city the [defendant] did carry upon his person a dangerous weapon; to wit, a switchblade in violation of § 53-206 (a) of the Connecticut General Statutes.

"So, the statute that defines the offense of carrying a dangerous weapon reads as follows: A person is guilty

of carrying a dangerous weapon when such person carries upon his person any knife having an automatic spring release device by which the blade is released from the handle.

"For you to find the defendant guilty of this charge, the state must prove beyond a reasonable doubt the following elements: number one, that the defendant carried a weapon. The first element is that the defendant carried a knife having an automatic spring release device by which the blade is released from the handle upon his person. The second element is that the defendant was outside his dwelling. It is not a violation of the law for one to have a switchblade knife within his abode or residence. The law would be violated *if you find that the defendant possessed the knife outside of his residence in a common hallway where the defendant did not have a legal right to control access and to exclude others.*

"To summarize, for you to find the defendant guilty of the charge in the second count, the state must prove beyond a reasonable doubt, one, the defendant carried a switchblade, that is, a knife with an automatic spring release device by which the blade is released from the handle upon his person and, two, that he was outside his dwelling.

"If you unanimously find that the state has proven beyond a reasonable doubt each of the elements of carrying a dangerous weapon, then you shall find the defendant guilty. On the other hand, if you unanimously find that the state has failed to prove beyond a reasonable doubt any one of those elements, you shall find the defendant not guilty."[3] (Emphasis added.)

---

[3] We note that the court characterized the residence or place of abode exception as the second element of the crime. The claim that a defendant is within his residence or place of abode while possessing the weapon is a defense to the crime of carrying a dangerous weapon, not an element. See General Statutes § 53-206 (b). For a defendant to be guilty of carrying a dangerous weapon, the state need only prove that "the defendant carried

The defendant excepted to the manner in which the court charged the jury, and the court noted the exception but did not reinstruct the jury. The jury returned a guilty verdict with respect to the charge of carrying a dangerous weapon. At sentencing, the defendant filed a postjudgment motion for a new trial and a motion for a judgment of acquittal, again arguing that the court's instruction with regard to the residence or place of abode exception to § 53-206 (a) was improper. The court denied the motions.

"[I]n appeals involving a constitutional question, [the standard is] whether it is reasonably possible that the jury [was] misled. . . . In determining whether it was . . . reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding [it] to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied . . . is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Internal quotation marks omitted.) *State* v. *Heinemann*, 282 Conn. 281, 300, 920 A.2d 278 (2007).

In *State* v. *Sealy*, supra, 208 Conn. 693 n.2, our Supreme Court stated that "§ 53-206 (a) does not expressly except from its terms the carrying of a dangerous weapon in one's dwelling or abode. This, however, is an implied exception." The court explained that for

on his person a dangerous or deadly weapon or instrument." See General Statutes § 53-206 (a); *State* v. *Ramirez*, 107 Conn. App. 51, 57, 943 A.2d 1138 (2008), aff'd, 292 Conn. 586, 973 A.2d 1251 (2009). In any event, the court's error benefited the defendant because it shifted the burden to the state to prove beyond a reasonable doubt that he was outside his residence or place of abode.

the residence or place of abode exception to apply, one must have an expectation of privacy in the area. Id., 693–94. According to the court, for an expectation of privacy to exist, an individual must show that he has "exclusive use of the area" and "the legal right to control access and to exclude others." Id., 694. The court concluded that a defendant living in an apartment building with a common street entrance and stairwell did not have the exclusive use or right to control the landing outside his neighbor's apartment or the common stairway. Id.

The defendant attempts to distinguish *Sealy* by arguing that the common hallways in Bodine Hall were needed to access shared areas necessary to daily life, including toilets, showers, laundry facilities and kitchenettes, and are thus covered by the residence or place of abode exception. The test used by our Supreme Court, however, considers only whether a person has the exclusive use of an area and the right to control access and to exclude others.

The defendant admits that he carried the weapon in the hallway of his college dormitory, and no evidence in the record supports a finding that he had the exclusive use of the hallway or the right to control access to, or to exclude others from, the hallway. Although students needed a key card to enter Bodine Hall, once students were inside the dormitory, they were free to access all common areas. Students had keys to access their individual room, but the hallway outside their dormitory rooms was not only accessible to all individuals in the building, but also was monitored by security cameras. Furthermore, students were not allowed to leave their possessions in the hallway, even in the area immediately outside of their rooms. Students had no reasonable expectation of privacy in the dormitory hallways. Pursuant to *State* v. *Sealy*, supra, 208 Conn. 694,

the defendant's carrying the knife in the common hallway fell outside the residence or place of abode exception.

The court's defining the terms residence or place of abode in accordance with *Sealy* was well within its role of "providing the jury with guidance by giving statements of the relevant legal criteria and relating the various possible factual determinations which the legal criteria permitted the jury to make." *United States* v. *Glaziou*, 402 F.2d 8, 18 (2d Cir. 1968), cert. denied, 393 U.S. 1121, 89 S. Ct. 999, 22 L. Ed. 2d 126 (1969). "It is the responsibility of the trial judge to provide the jury with sufficient instruction to enable it to assess the evidence within the proper legal framework and to reach a rational verdict." *United States* v. *Parker*, 903 F.2d 91, 101 (2d Cir.), cert. denied, 498 U.S. 872, 111 S. Ct. 196, 112 L. Ed. 2d 158 (1990).

The language in the court's jury charge—that the law would be violated if the jury found that the defendant carried the knife "in a common hallway"—is the same as that used in *State* v. *Sealy*, supra, 208 Conn. 692 n.1. The court also properly applied the definition of common hallway as it was defined by our Supreme Court. The court did not, as the defendant claims, improperly remove a factual issue from the jury's consideration; it merely provided a legal definition to the jury as to what was meant by the statutory terms residence or place of abode. The jury had to find, as a matter of fact, that the altercation did not take place in the common hallway for the defendant to be within the purview of the exception, as a matter of law.

On the basis of our review of the court's instruction to the jury, we conclude that the court did not abuse its discretion in refusing to give a requested jury instruction and did not usurp the jury's fact-finding function. The court properly guided the jury by defining the terms

"residence or place of abode" in accordance with precedent. For the foregoing reasons, we conclude that it is not reasonably possible that the jury was misled by the court's instruction.

The judgment is affirmed.

In this opinion the other judges concurred.