## STATE OF CONNECTICUT *v.* ANDRE CAMPBELL
(SC 18453)

Rogers, C. J., and Norcott, Palmer, Zarella, McLachlan, Eveleigh and Vertefeuille, Js.

Argued November 30, 2010—officially released March 8, 2011

*Lisa J. Steele*, special public defender, for the appellant (defendant).

*Adam E. Mattei*, special deputy assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Joseph T. Corradino*, senior assistant state's attorney, for the appellee (state).

*Opinion*

VERTEFEUILLE, J. The defendant, Andre Campbell, was charged with assault in the first degree in violation of General Statutes § 53a-59 (a) (1) and carrying a dangerous weapon, namely, a switchblade knife, in violation of General Statutes § 53-206 (a),[1] in connection

---

[1] General Statutes § 53-206 provides in relevant part: "(a) Any person who carries upon his or her person any BB. gun, blackjack, metal or brass knuckles, or any dirk knife, or any switch knife, or any knife having an automatic spring release device by which a blade is released from the handle, having a blade of over one and one-half inches in length, or stiletto, or any knife the edged portion of the blade of which is four inches or over in length, any police baton or nightstick, or any martial arts weapon or electronic defense weapon, as defined in section 53a-3, or any other dangerous or deadly weapon or instrument, shall be fined not more than five hundred dollars or imprisoned not more than three years or both. Whenever any person is found guilty of a violation of this section, any weapon or other instrument within the provisions of this section, found upon the body of such person, shall be forfeited to the municipality wherein such person was apprehended, notwithstanding any failure of the judgment of conviction to expressly impose such forfeiture.

"(b) The provisions of this section shall not apply to . . . (3) the carrying of a knife, the edged portion of the blade of which is four inches or over

with an incident that took place in a common hallway of the college dormitory where he resided. The jury returned a verdict of not guilty on the assault charge and guilty on the charge of carrying a dangerous weapon, and the trial court thereafter rendered judgment in accordance with the verdict. The defendant appealed from the judgment of conviction to the Appellate Court, claiming that the trial court improperly denied his request to instruct the jury that his conduct would fall into an implied exception to § 53-206 if the jury found that the conduct occurred in his place of abode. *State* v. *Campbell*, 116 Conn. App. 440, 441–42, 975 A.2d 757 (2009). The Appellate Court affirmed the trial court's judgment of conviction. Id., 449. We then granted the defendant's petition for certification to appeal limited to the following question of "[w]hether the Appellate Court properly relied on *State* v. *Sealy*, 208 Conn. 689, 546 A.2d 271 (1988), to conclude that one's residence or place of abode cannot include common corridors and areas used to access a bathroom, kitchen and other areas necessary to life . . . ." *State* v. *Campbell*, 293 Conn. 926, 927, 980 A.2d 913 (2009). Following oral argument in this court, we ordered the parties to submit supplemental briefs on the question of whether subparagraphs (D) and (E) of § 53-206 (b) (3) provide an implicit exception for the carrying of a weapon in an individual's residence or place of abode

in length, by . . . (D) any person who is found with any such knife concealed upon one's person while lawfully removing such person's household goods or effects from one place to another, or from one residence to another, [or] (E) any person while actually and peaceably engaged in carrying any such knife from such person's place of abode or business to a place or person where or by whom such knife is to be repaired, or while actually and peaceably returning to such person's place of abode or business with such knife after the same has been repaired . . . ."

Technical changes, not relevant to this appeal, were made to § 53-206 in 2010. See Public Acts 2010, No. 10-32, § 148. For purposes of convenience, references herein to § 53-206 are to the current revision unless otherwise noted.

for any weapon other than a knife, the edged portion of the blade of which is four inches or more in length (long knife). We now answer that question in the negative, and, because it is undisputed that the defendant was carrying a switchblade knife, we affirm the judgment of the Appellate Court on this alternative ground.

The Appellate Court opinion sets forth the following facts and procedural history. "On the evening of January 31, 2006, the defendant was a freshman at the University of Bridgeport. He lived on the sixth floor of Bodine Hall. In response to several violent incidents on campus, the defendant regularly carried a switchblade knife.

"The defendant went to Kyle Boucher's room, where several friends were 'hanging out.' The defendant made a joke at Boucher's expense, and Boucher, angered by the comment, asked the defendant not to be disrespectful of him and to leave his room. The defendant did not think Boucher was serious and did not leave, but when Boucher asked him again, the defendant gathered his possessions and began to exit.

"As the defendant was leaving the room, Boucher pushed him into the hallway. Boucher then threw a pretend punch at the defendant, and the defendant, concerned with Boucher's sudden change in demeanor, responded by drawing his switchblade knife. The two individuals argued, and a physical altercation ensued in the hallway. During the fight, the defendant stabbed Boucher four times. Eventually, other students entered the hallway and broke up the fight. The defendant was visibly upset after the fight and attempted to get help for Boucher. When the police arrived, the defendant cooperated with them, gave them his knife and later gave a statement of the events that took place.

"The defendant subsequently was charged with assault in the first degree in violation of . . . § 53a-59 (a) (1) and carrying a dangerous weapon in violation

of § 53-206 (a). Following a jury trial, the defendant was found not guilty of assault in the first degree and the lesser included offenses. The defendant was found guilty of carrying a dangerous weapon and was sentenced to three years imprisonment, execution suspended, and five years of probation with special conditions." *State* v. *Campbell,* supra, 116 Conn. App. 442–43.

The defendant then appealed from the judgment of conviction to the Appellate Court, claiming "that the court abused its discretion in refusing to give a requested jury instruction regarding the residence or place of abode exception to § 53-206. Specifically, he claim[ed] that the jury should have had the opportunity to decide the parameters of the defendant's 'residence or place of abode.' By defining the terms 'residence or place of abode' in its instructions to the jury, the defendant claim[ed], the court usurped the jury's fact-finding function." Id., 443–44. The Appellate Court concluded that, pursuant to this court's decision in *State* v. *Sealy,* supra, 208 Conn. 692, the trial court properly had determined that the hallway of the defendant's dormitory was not his place of abode for purposes of § 53-206, and had so instructed the jury. *State* v. *Campbell,* supra, 116 Conn. App. 448–49. Accordingly, the Appellate Court affirmed the judgment of the trial court. Id., 449. This certified appeal followed.

The defendant initially claimed on appeal that the Appellate Court improperly determined that, under *State* v. *Sealy,* supra, 208 Conn. 692, the common hallway of a dormitory does not constitute part of an abode for purposes of the abode exception to § 53-206.[2] The

[2] The defendant also claimed that the Appellate Court improperly determined that "[t]he claim that a defendant is within his residence or place of abode while possessing the weapon is a defense to the crime of carrying a dangerous weapon, not an element." *State* v. *Campbell,* supra, 116 Conn. App. 445 n.3. Because we conclude that the implicit abode exception does not apply to weapons other than long knives, we need not address this claim.

state disputed this claim and claimed as alternative grounds for affirmance that, even if the trial court's instructions were incorrect, they were harmless because the defendant admitted to carrying the switchblade knife in areas that indisputably were outside his residence. Following oral argument on the certified question, this court ordered the parties to submit supplemental briefs on the question of whether § 53-206 (b) (3) (D) and (E) provide an implicit exception for the carrying of a weapon in an individual's residence or place of abode for any weapon other than a long knife. The defendant submitted a supplemental brief in which he contended that the exception was not limited to long knives. The state submitted a supplemental brief in which it contended that, to the contrary, because § 53-206 (b) (3) expressly refers to "the carrying of a knife, the edged portion of the blade of which is four inches or over in length," the exception plainly and unambiguously applies only to that weapon. We agree with the state and affirm the judgment of the Appellate Court on this alternative ground. Because this conclusion is dispositive of the question of whether the defendant was entitled to a jury instruction under § 53-206 (b) (3) (D) and (E), we need not consider the question of whether the common hallway of a dormitory constitutes the abode of a dormitory residence for purposes of this statute.

To provide context for our resolution of this issue, we begin with a review of the genealogy of § 53-206. Before 1999, § 53-206 provided in relevant part: "(a) Any person who carries upon his person any slung shot, air rifle, BB. gun, blackjack, sand bag, metal or brass knuckles, or any dirk knife, or any switch knife, or any knife having an automatic spring release device by which a blade is released from the handle, having a blade of over one and one-half inches in length, or stiletto, or any knife the edged portion of the blade of

which is four inches or over in length, or any martial arts weapon or electronic defense weapon, as defined in section 53a-3, or any other dangerous or deadly weapon or instrument . . . shall be fined not more than five hundred dollars or imprisoned not more than three years or both. . . . The provisions of this subsection shall not apply to . . . any person who is found with any such weapon or implement concealed upon his person while lawfully removing his household goods or effects from one place to another, or from one residence to another, nor to any person while actually and peaceably engaged in carrying any such weapon or implement from his place of abode or business to a place or person where or by whom such weapon or implement is to be repaired, or while actually and peaceably returning to his place of abode or business with such weapon or implement after the same has been repaired. . . .'' General Statutes (Rev. to 1997) § 53-206 (a). In *State* v. *Sealy*, supra, 208 Conn. 693, this court held that ''[i]mplicit in this provision is an exception for carrying a weapon in an individual's residence or abode, and a recognition of the protected zone of privacy in his or her dwelling.'' The defendant in the present case relies on this language in *Sealy* to support his claim that the trial court should have instructed the jury that it could not convict him of violating § 53-206 if it found that the common corridor of the dormitory was part of his residence or place of abode.

In 1999, the legislature amended § 53-206 by more clearly dividing it into a prohibitory subsection; see Public Acts 1999, No. 99-212, § 12 (a) (P.A. 99-212, § 12), now codified as General Statutes § 53-206 (a); and a subsection setting forth exceptions to the prohibition. See P.A. 99-212, § 12 (b), now codified as General Statutes § 53-206 (b). The prohibitory subsection deleted slung shots, air rifles and sand bags from the enumeration of dangerous weapons, and added police batons

or nightsticks, but was otherwise substantially identical to the prohibitory clause of the previous version of the statute. Compare General Statutes (Rev. to 1997) § 53-206 (a) with the current General Statutes § 53-206 (a). In the exception subsection, however, the legislature eliminated the language providing that the provisions of the subsection did not apply to any person found with any such *"weapon or implement* concealed upon his person" while traveling to and from the person's place of abode for the specified purposes; (emphasis added) General Statutes (Rev. to 1997) § 53-206 (a); and replaced it with the language now codified as § 53-206 (b) (3) (D) and (E), which relates solely to long knives. See P.A. 99-212, § 12 (b) (3) (D) and (E). In addition, the legislature clarified an existing exception and provided five new exceptions, each of which also related to specific weapons. See P.A. 99-212, § 12 (b) (1) through (6), now codified as General Statutes § 53-206 (b) (1) through (6).[3]

---

[3] General Statutes § 53-206 (b) currently provides: "The provisions of this section shall not apply to (1) any officer charged with the preservation of the public peace while engaged in the pursuit of such officer's official duties; (2) the carrying of a baton or nightstick by a security guard while engaged in the pursuit of such guard's official duties; (3) the carrying of a knife, the edged portion of the blade of which is four inches or over in length, by (A) any member of the armed forces of the United States, as defined in section 27-103, or any reserve component thereof, or of the armed forces of this state, as defined in section 27-2, when on duty or going to or from duty, (B) any member of any military organization when on parade or when going to or from any place of assembly, (C) any person while transporting such knife as merchandise or for display at an authorized gun or knife show, (D) any person who is found with any such knife concealed upon one's person while lawfully removing such person's household goods or effects from one place to another, or from one residence to another, (E) any person while actually and peaceably engaged in carrying any such knife from such person's place of abode or business to a place or person where or by whom such knife is to be repaired, or while actually and peaceably returning to such person's place of abode or business with such knife after the same has been repaired, (F) any person holding a valid hunting, fishing or trapping license issued pursuant to chapter 490 or any salt water fisherman carrying such knife for lawful hunting, fishing or trapping activities, or (G) any person while participating in an authorized historic reenactment; (4) the carrying

With this background in mind, we turn to the question of whether § 53-206 (b) (3) applies to weapons other than long knives. This is a question of statutory interpretation over which our review is plenary. *Hartford/Windsor Healthcare Properties, LLC* v. *Hartford*, 298 Conn. 191, 197, 3 A.3d 56 (2010). "In making such determinations, we are guided by fundamental principles of statutory construction. See General Statutes § 1-2z;[4] *Testa* v. *Geressy*, 286 Conn. 291, 308, 943 A.2d 1075 (2008) ([o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature . . .)." (Internal quotation marks omitted.) *In re Matthew F.*, 297 Conn. 673, 688, 4 A.3d 248 (2010).

Section 53-206 (a) provides in relevant part that "[a]ny person who carries upon his or her person any BB. gun, blackjack, metal or brass knuckles, or any dirk knife, or any switch knife, or any knife having an automatic spring release device by which a blade is released from the handle, having a blade of over one and one-half inches in length, or stiletto, or any knife the edged portion of the blade of which is four inches or over in length, any police baton or nightstick, or any martial

---

by any person enrolled in or currently attending, or an instructor at, a martial arts school of a martial arts weapon while in a class or at an authorized event or competition or while transporting such weapon to or from such class, event or competition; (5) the carrying of a BB. gun by any person taking part in a supervised event or competition of the Boy Scouts of America or the Girl Scouts of America or in any other authorized event or competition while taking part in such event or competition or while transporting such weapon to or from such event or competition; and (6) the carrying of a BB. gun by any person upon such person's own property or the property of another person provided such other person has authorized the carrying of such weapon on such property, and the transporting of such weapon to or from such property."

[4] General Statutes § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

arts weapon or electronic defense weapon, as defined in section 53a-3, or any other dangerous or deadly weapon or instrument, shall be fined not more than five hundred dollars or imprisoned not more than three years or both. . . ." Section 53-206 (b) provides in relevant part that "[t]he provisions of this section shall not apply to . . . (3) the carrying of a knife, the edged portion of the blade of which is four inches or over in length, by . . . (D) any person who is found with any such knife concealed upon one's person while lawfully removing such person's household goods or effects from one place to another, or from one residence to another, [or] (E) any person while actually and peaceably engaged in carrying any such knife from such person's place of abode or business to a place or person where or by whom such knife is to be repaired, or while actually and peaceably returning to such person's place of abode or business with such knife after the same has been repaired . . . ."

We conclude that the exceptions set forth in subparagraphs (D) and (E) of § 53-206 (b) (3) plainly and unambiguously apply only to the carrying of long knives. Nothing in the language or structure of the statute suggests that the legislature intended to maintain the preexisting exception for "any . . . weapon or implement" listed in the prohibitory clause. General Statutes (Rev. to 1997) § 53-206 (a). Accordingly, although we reaffirm our holding in *State* v. *Sealy*, supra, 208 Conn. 693, that the language of what is now § 53-206 (b) (3) (D) and (E) implicitly provides an exception for carrying a long knife in one's residence or abode, the defendant would not be entitled to a jury instruction under the statute even if the common hallway of the dormitory constituted his abode because he was carrying a switchblade knife, which is prohibited irrespective of location. We therefore affirm the judgment of the Appellate Court on this alternative ground.

In support of his claim to the contrary, the defendant first claims that limiting the exceptions set forth in subparagraphs (D) and (E) of § 53-206 (b) (3) to long knives would be unworkable. For example, he points out that § 53-206 (b) (4) permits "the carrying by any person enrolled in or currently attending, or an instructor at, a martial arts school of a martial arts weapon while in a class or at an authorized event or competition or while transporting such weapon to or from such class, event or competition," and contends that this exception would be meaningless if such a person could not carry a martial arts weapon at home. We are not persuaded. Section 53-206 (a) prohibits the carrying of a dangerous weapon "upon his or her person . . . ." Accordingly, a martial arts student who carried a martial arts weapon upon his or her person while transporting it to and from classes or other events, but kept the weapon stored at home, would not be violating the statute. To the extent that any exception set forth in § 53-206 (b) would be unworkable if the person to whom it applied were not permitted to store the weapon in a convenient place or to transport the weapon so that it could be used for the permitted purpose; see, e.g., General Statutes § 53-206 (b) (1) (providing exception to prohibition on carrying dangerous weapons for "any officer charged with the preservation of the public peace while engaged in the pursuit of such officer's official duties"); we must conclude that permission to do so is implicit in the exception. See *State* v. *Sealy,* supra, 208 Conn. 693 and n.2 (permission to carry weapon in residence is implicit in exception allowing person to carry weapon while transporting weapon to and from residence);[5] *Williams* v. *Commission on*

[5] We acknowledge that our holding in *Sealy* that there is an implicit exception for *carrying* a dangerous weapon in one's residence, as distinct from storing it, does not strictly follow from the language of the applicable version of § 53-206 permitting persons to carry dangerous weapons while transporting them to and from the residence for the specified purposes. We agree with the state, however, that, when the legislature amended § 53-206

*Human Rights & Opportunities*, 257 Conn. 258, 300, 777 A.2d 645 (2001) (this court will "not presume that the legislature has enacted futile or meaningless legislation" [internal quotation marks omitted]). Similarly, we conclude that an exception permitting an individual to carry a specific dangerous weapon for a particular purpose implicitly permits the individual to move the weapon with his or her household goods and to transport the weapon for purposes of repair.[6] We conclude, therefore, that the exceptions set forth in § 53-206 (b) are workable without the existence of an implicit exception permitting the carrying of any and all dangerous weapons in one's residence or place of abode.

---

in 1999, it presumptively was aware of our decision in *Sealy*; see *State* v. *Canady*, 297 Conn. 322, 333, 998 A.2d 1135 (2010) ("we . . . presume that the legislature is aware of [this court's] interpretation of a statute" [internal quotation marks omitted]); and that it intended that the implicit exception for carrying a weapon in one's residence or place of abode that we recognized in *Sealy* would continue to apply to the carrying of long knives. We also agree with the state that it is reasonable to conclude that the reason that the legislature maintained this exception for long knives is that they generally are not used as weapons in the home, but are used as cooking and eating implements.

[6] We emphasize that this does not mean that an individual would be permitted to carry all of the dangerous weapons specified in § 53-206 (b) on his or her person in the individual's residence or place of abode for other purposes. See footnote 5 of this opinion. For example, it does not follow from the fact that a martial arts student would be permitted to carry a martial arts weapon from his or her residence to a place of repair that the individual would be permitted as a general matter to carry the weapon in his or her residence. If that were the case, there would be no reason why an individual who was *not* a martial arts student should be prohibited from carrying a martial arts weapon in his or her residence. There is no indication, however, that the legislature was concerned with protecting a general sphere of privacy in the home, where individuals would be permitted to carry any dangerous weapon for any purpose they see fit. Rather, the clear purpose of the exceptions is to allow individuals to carry specific dangerous weapons for specific purposes and, to the extent that using the weapon for the permitted purpose requires the individual to carry it for ancillary purposes such as transportation to the place of use or repair, to permit carrying the weapon for those purposes.

The defendant also points out that, under General Statutes (Rev. to 1997) § 53-206 (a), a person could obtain a permit to carry any of the enumerated dangerous weapons,[7] and asserts that "[t]he abolition of the local permit system and its replacement with . . . presumed lawful reasons to carry certain weapons in public was intended to simplify ownership, not to create uncertainty and a risk of law-abiding citizens becoming felons for items owned in their own homes." Again, however, the defendant simply ignores the fact that the statute now recognizes no "presumed lawful reason" for carrying a switchblade knife. If, in enacting § 53-206 (b) (3) (D) and (E), the legislature had intended to provide that it was presumptively lawful to carry a dangerous weapon other than a long knife in one's residence or place of abode, it would not have deleted the language "any such weapon or implement"; General Statutes (Rev. to 1997) § 53-206 (a); from that portion of the statute when it revised § 53-206 in 1999. See P.A. 99-212, § 12 (b).

Finally, the defendant appears to suggest that our holding in *Sealy* that the version of § 53-206 then in effect contained an implicit exception for carrying dangerous weapons in the home was constitutionally based; see *State* v. *Sealy*, supra, 208 Conn. 693 (implicit abode exception is in "recognition of the protected zone of privacy in [person's] dwelling"); and, therefore, we should presume that the legislature did not intend to narrow the exception when it amended the statute in 1999. See *Giaimo* v. *New Haven*, 257 Conn. 481, 494, 778 A.2d 33 (2001) ("the legislature is presumed to have intended a reasonable, just and constitutional result" [internal quotation marks omitted]); see also *State* v.

---

[7] General Statutes (Rev. to 1997) § 53-206 (a) provides that the carrying of a dangerous weapon by any person is prohibited "unless such person has been granted a written permit issued and signed" by one of several enumerated officials.

*Delgado*, 298 Or. 395, 397, 692 P.2d 610 (1984) (statute prohibiting possession and carrying of switchblade violated provision of Oregon constitution providing that "[t]he people shall have the right to bear arms for the defence of themselves" [internal quotation marks omitted]). We disagree. Although, in *Sealy*, this court relied on cases defining the scope of a tenant's "constitutionally cognizable expectation of privacy" to define by analogy the *scope* of the implicit abode exception to the applicable version of § 53-206; (internal quotation marks omitted) *State* v. *Sealy*, supra, 693; the court did not hold that the *existence* of the exception was constitutionally mandated. In any event, even if an abode exception is constitutionally required for all dangerous weapons, the presumption that the legislature intends a constitutional result cannot overcome the plain and unambiguous language of § 53-206 (b) (3) providing that the exception applies only to long knives. See footnote 6 of this opinion. To the extent that the defendant claims that § 53-206 is unconstitutional as applied to persons who carry dangerous weapons in their residence or place of abode, the claim was not preserved before the trial court and the defendant has not sought review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[8] Accordingly, we decline to review it.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

---

[8] Under *State* v. *Golding*, supra, 213 Conn. 239–40, "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt."