STATE OF CONNECTICUT *v.* EARL REDDICK
(13148)

PETERS, C. J., SHEA, CALLAHAN, COVELLO and HULL, Js.

Argued January 13—decision released May 10, 1988

*Kent Drager,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (defendant).

*Roland D. Fasano,* assistant state's attorney, with whom, on the brief, was *Arnold Markle,* state's attorney, for the appellee (state).

CALLAHAN, J. The defendant was charged in a substitute information with aiding and abetting a robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (4) and 53a-8, conspiracy to commit robbery in the first degree in violation of General Statutes § 53a-48, and possession of a sawed-off shotgun in violation of General Statutes § 53a-211.[1] A jury acquitted him of aiding and abetting a robbery and of conspiracy but found him guilty of possession of a sawed-off shotgun. He was sentenced by the trial court to a term of five years imprisonment. We find error.

The robbery and conspiracy charges resulted from the robbery of Bask's Liquor Cabinet at 432 Shelton Avenue in New Haven at about 1:30 p.m. on June 28, 1985. In that robbery, a lone black male entered the liquor store carrying a double-barreled, sawed-off shot-

---

[1] "[General Statutes] Sec. 53a-211. POSSESSION OF A SAWED-OFF SHOTGUN OR SILENCER: CLASS D FELONY. (a) A person is guilty of possession of a sawed-off shotgun or a silencer when he owns, controls or possesses any sawed-off shotgun that has a barrel of less than eighteen inches or an overall length of less than twenty-six inches or when he owns, controls or possesses any silencer designed to muffle the noise of a firearm during discharge.

"(b) The provisions of this section shall not apply to persons, firms, corporations or museums licensed or otherwise permitted by federal or state law to possess, control or own sawed-off shotguns or silencers.

"(c) Possession of a sawed-off shotgun or silencer is a class D felony."

gun concealed in a green trash bag. Displaying the shotgun, he forced a clerk, Barbara DiBenedetto, into a back room where she was made to sit on the floor. While the black male with the shotgun stood guard, another person, whom DiBenedetto heard but did not see, entered the store and emptied the cash register. DiBenedetto later discovered that her handbag had also been taken.

The defendant was linked to the robbery as a result of the execution of a search warrant at a two-family house located at 124-126 Read Street in the Newhall section of New Haven. The information in the affidavit relied upon to secure the issuance of the search warrant was obtained by Detective Michael Bouchard of the Hamden police department and Detective Douglas McDonald of the New Haven police department who were jointly investigating a number of store holdups in the Hamden-New Haven area by a team of black males.

On July 3, 1985, at approximately 9:30 a.m., while conducting the investigation, Bouchard came upon an older, brown Cadillac parked in front of 125 Read Street in New Haven. The Cadillac fit the description of a car observed at the scene of the holdups that McDonald and Bouchard were investigating. Bouchard summoned McDonald and together they conducted a surveillance of the automobile until it was approached by the defendant and Terrance Bethea, both black males. The detectives confronted and questioned the two men briefly. It was then discovered, through a warrant check, that there was an outstanding arrest warrant for Bethea on a robbery charge. Bethea was taken into custody and brought to New Haven police headquarters where he subsequently spoke to police and gave a statement.

Bethea told the police that he had spent the previous night with the defendant in the defendant's bed-

room on the third floor of the defendant's mother's apartment at 124-126 Read Street. While there, he had observed a double-barreled, sawed-off shotgun in the drawer of a dresser located in the defendant's third floor bedroom. He said that in the bedroom he had also seen a pair of sunglasses with bright red frames and a red safety strap. Similar glasses had been described as having been worn by one of the perpetrators of the robberies that were under investigation. Bethea also said that he had seen the glasses a few days earlier on Preston Wright, the boyfriend of the defendant's sister.

As a result of this and other information supplied by Bethea, McDonald and Bouchard obtained a search warrant for the defendant's person, the brown Cadillac and "[t]he premises of 124-126 Read Street, New Haven, *Second and Third Floor.*" (Emphasis added.) When the detectives executed the search warrant they located the sunglasses in a woman's purse hanging on the wall of the third floor bedroom. Bouchard also found DiBenedetto's handbag, checkbook, and some of her personal papers, as well as the cash drawer from the liquor store register and a green trash bag inside another trash bag located directly outside the defendant's bedroom door. In addition, DiBenedetto's keys, which also had been taken in the robbery, were discovered on top of a dresser in the bedroom.

Despite a diligent search, however, the shotgun was not found on either the second or third floors of 124-126 Read Street. Those floors constituted the living area of the defendant's mother's apartment and were the only areas of the house the warrant authorized the police to search. McDonald, however, unilaterally decided to expand the search and descended to the basement. The basement was accessible from both the defendant's mother's second floor apartment and the first floor apartment that was occupied by an elderly

woman, a double amputee, confined to a wheel chair. The basement was unpartitioned and housed a clothes washer and dryer. McDonald found the sawed-off shotgun hidden in the tub of the washer. After consulting with his superior and the judge who signed the search warrant, McDonald seized the shotgun. The defendant was subsequently charged with its possession.

Prior to trial, a motion to suppress the shotgun and the items recovered from the trash bag was heard and denied.[2] At trial, the shotgun was admitted into evidence and identified by DiBenedetto as similar to the shotgun she saw during the robbery and by McDonald as the shotgun he had seized in the basement of the house where the defendant's mother lived. DiBenedetto also identified the personal property that was recovered in the search as hers and testified that the sunglasses found were similar to those worn by the robber who had confronted her. She testified further, however, that the defendant was definitely not the robber with the shotgun.[3]

On appeal, the defendant has raised several claims of error. For the purposes of this appeal we think it necessary to address three of those claims.

---

[2] The testimony at the conclusion of the hearing to suppress evidence, at which time the trial court denied the defendant's motion, indicated that the defendant lived with his mother at 124-126 Read Street and that the bedroom searched was his. The defendant's testimony at the trial, however, indicated that he was staying only temporarily with his mother at 124-126 Read Street and that the bedroom was his sister's. Under the view we take of the case, this discrepancy does not have to be resolved because, under either version, it appears the defendant was legitimately on the premises at 124-126 Read Street with his mother's permission and had stayed there several days immediately prior to July 3, 1985. See *United States* v. *Haydel,* 649 F.2d 1152 (5th Cir. 1981), cert. denied, 455 U.S. 1022, 102 S. Ct. 1721, 72 L. Ed. 2d 140 (1982).

[3] DiBenedetto had previously identified Preston Wright as the wielder of the shotgun. Wright pleaded guilty to the Bask's Liquor Cabinet robbery prior to the defendant's trial.

## I

We first address the defendant's claim that there was insufficient evidence to convict him of possession of the sawed-off shotgun.

In reviewing a sufficiency of the evidence claim, we view the evidence in the most favorable light possible, with a view toward sustaining the verdict of the jury. *State* v. *Alfonso,* 195 Conn. 624, 633, 490 A.2d 75 (1985); *State* v. *Gabriel,* 192 Conn. 405, 421, 473 A.2d 300 (1984); *State* v. *Raffone,* 161 Conn. 117, 125, 285 A.2d 323 (1971). We cannot retry the case. *State* v. *Rodriquez,* 200 Conn. 685, 693, 513 A.2d 71 (1986); *Kaplan* v. *Kaplan,* 186 Conn. 387, 391, 441 A.2d 629 (1982). Nor can we "sit as a [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. We have not had the jury's opportunity to observe the conduct, demeanor, and attitude of the witnesses and to gauge their credibility." *State* v. *Stepney,* 191 Conn. 233, 255, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984).

The state was not required to prove that the defendant had actual physical possession of the shotgun. *State* v. *Gonski,* 155 Conn. 463, 467, 232 A.2d 483 (1967). It was necessary only to prove that he had exercised dominion and control over it and had knowledge of its presence and character. *State* v. *Kas,* 171 Conn. 127, 130, 368 A.2d 196 (1976); *State* v. *Williams,* 169 Conn. 322, 335, 363 A.2d 72 (1975); *State* v. *Harris,* 159 Conn. 521, 531, 271 A.2d 74 (1970), cert. dismissed, 400 U.S. 1019, 91 S. Ct. 578, 27 L. Ed. 2d 630 (1971).

After a careful review of the record we cannot say that the jury could not reasonably have concluded, upon the facts established and the reasonable inferences

drawn therefrom, that the cumulative effect of the evidence was sufficient to justify a verdict of guilty beyond a reasonable doubt.

## II

We next address the defendant's claim that the trial court erred by denying his motion to suppress the shotgun that was seized as a result of McDonald's warrantless search of the basement.[4] The state contends that, because the defendant did not pay rent, had no possessory interest in his mother's apartment, and had no reasonable expectation of privacy in the basement, he "lacked standing to challenge the seizure of the sawed-off shotgun."

The defendant claims that as a resident of his mother's apartment he had a reasonable expectation of privacy in the apartment and its appurtenances. He argues, therefore, that absent exigent circumstances, or some other exception to the warrant requirement, not present here, the search of the basement and the seizure of the shotgun violated his rights under the fourth amendment to the United States constitution and the shotgun should not have been admitted into evidence. We agree with the defendant.

A person is entitled to fourth amendment protection anywhere he resides where he has a reasonable expectation of privacy. *Commonwealth* v. *Strickland,* 457 Pa. 631, 634, 326 A.2d 379 (1974); 4 W. LaFave, Search and Seizure § 11.3 (a), p. 285. A person "who resides

---

[4] After McDonald found the shotgun, and before he seized it, he telephoned the judge who had issued the search warrant and was given permission to add "And the basement of 124-126 Read St." to the warrant. The state does not claim that this was of any effect, and the seizure of the shotgun has been treated by both the state and the defendant as having been made without a warrant. A search cannot be justified by the potent evidence it produces. *Byars* v. *United States,* 273 U.S. 28, 29, 47 S. Ct. 248, 71 L. Ed. 520 (1927); *State* v. *Zindros,* 189 Conn. 228, 255, 456 A.2d 288 (1983), cert. denied, 465 U.S. 1012, 104 S. Ct. 1014, 79 L. Ed. 2d 244 (1984); see also *Commonwealth* v. *Shaw,* 476 Pa. 543, 552, 383 A.2d 496 (1978).

at a private residence with permission of the [lessee] as a guest or invitee may demonstrate an expectation of privacy in the premises legally sufficient to support a challenge to a police search." *United States* v. *Cassity,* 720 F.2d 451, 458 (6th Cir. 1983), vacated and remanded, 468 U.S. 1212, 104 S. Ct. 3581, 82 L. Ed. 2d 879 (1984), rev'd on other grounds, 604 F. Sup. 1566 (E.D. Mich. 1985), aff'd, 807 F.2d 509 (6th Cir. 1986); *United States* v. *Underwood,* 717 F.2d 482, 486 n.1 (9th Cir. 1983) (Skopil, J., dissenting), cert. denied, 465 U.S. 1036, 104 S. Ct. 1309, 79 L. Ed. 2d 707 (1984); see also *United States* v. *Torres,* 705 F.2d 1287, vacated and remanded on other grounds, 718 F.2d 998 (11th Cir. 1983), on appeal after remand, 741 F.2d 1323 (11th Cir. 1984); *United States* v. *Robertson,* 606 F.2d 853, 858 n.2 (9th Cir. 1979); *State* v. *Cardona,* 6 Conn. App. 124, 133–34, 504 A.2d 1061 (1986). Moreover, that expectation of privacy may extend to all parts of the house. *United States* v. *Cassity,* supra, 457; *United States* v. *Torres,* supra, 1295; see *United States* v. *Banerman,* 552 F.2d 61, 64 (2d Cir. 1977).

The capacity to claim the protection of the fourth amendment does not depend upon a property interest, permanency of residence, or payment of rent but upon whether the person who claims fourth amendment protection has a reasonable expectation of privacy in the invaded area. *Rakas* v. *Illinois,* 439 U.S. 128, 143, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978), reh. denied, 439 U.S. 1122, 99 S. Ct. 1035, 59 L. Ed. 2d 83 (1979); *Terry* v. *Ohio,* 392 U.S. 1, 8–13, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *Katz* v. *United States,* 389 U.S. 347, 353, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967); *United States* v. *Lyons,* 706 F.2d 321, 327 (D.C. Cir. 1983); *Commonwealth* v. *Rowe,* 433 Pa. 14, 17, 249 A.2d 911 (1969). Further, the fact that a person does not have the exclusive use of an area does not bar his having a reasonable expectation of privacy that furnishes standing to

object to a government search. *Mancusi* v. *DeForte,* 392 U.S. 364, 368, 88 S. Ct. 2120, 20 L. Ed. 2d 1154 (1968); *Garrison* v. *State,* 345 A.2d 86, 93 (Md. App. 1975).

Whether a reasonable expectation of privacy exists is a determination to be made on a case-by-case basis. *United States* v. *Brock,* 667 F.2d 1311, 1320 n.8 (9th Cir. 1982), cert. denied, 460 U.S. 1022, 103 S. Ct. 1271, 75 L. Ed. 2d 493 (1983); *United States* v. *Brown,* 635 F.2d 1207, 1211 (6th Cir. 1980); *State* v. *Brown,* 198 Conn. 348, 356, 503 A.2d 566 (1986); *State* v. *Zindros,* 189 Conn. 228, 239–40, 456 A.2d 288 (1983), cert. denied, 465 U.S. 1012, 104 S. Ct. 1014, 79 L. Ed. 2d 244 (1984). That determination entails a two-part inquiry: first, whether the individual has exhibited an actual subjective expectation of privacy, and second, whether that expectation is one society recognizes as reasonable. *Katz* v. *United States,* supra, 361; *United States* v. *Cassity,* supra, 456; *State* v. *Zindros,* supra, 239; *State* v. *Cooper,* 9 Conn. App. 15, 20, 514 A.2d 758 (1986).

We believe that an adult son or daughter, such as the defendant, who is living permanently or staying temporarily with a parent in the parental home, has a reasonable expectation of privacy in that home. The relationship of parent and child is normally such that the child would be on the premises legitimately, would have free access to its facilities, would be able to exclude uninvited or unauthorized persons and would have a legitimate expectation that the home would be free of governmental intrusion. See *United States* v. *Cassity,* supra, 458; *United States* v. *Torres,* supra, 1294–95; *United States* v. *Haydel,* 649 F.2d 1152, 1154–55 (5th Cir. 1981), cert. denied, 455 U.S. 1022, 102 S. Ct. 1721, 72 L. Ed. 2d 140 (1982); *State* v. *Cardona,* supra, 134. The evidence is indicative of that type of relationship in this case. Indeed, the defendant had a key to his

mother's apartment with which he admitted the police the day of the search and with which he could come and go as he pleased. Under the circumstances, the defendant had a legitimate expectation of privacy in his mother's home that is "recognized and permitted by society." *Rakas* v. *Illinois,* supra, 143 n.12. He, in effect, stood in the shoes of his mother. *United States* v. *Cassity,* supra, 458.

Further, if, as the jury apparently found, the defendant caused the shotgun to be placed in the clothes washer in the basement, he obviously exhibited a subjective expectation of privacy in that area of his mother's home. See *United States* v. *Taborda,* 635 F.2d 131, 137 (2d Cir. 1980). The salient question then is whether the defendant's subjective expectation of privacy in the common basement area of a two-family house is an expectation that society would recognize as reasonable. *Katz* v. *United States,* supra, 361; *State* v. *Zindros,* supra, 239.

Police observations in the common areas of multiple family dwellings do not constitute a search under the fourth amendment if the circumstances indicate that the area is readily accessible to outsiders. 1 W. LaFave, supra, § 2.3 (b), p. 388. The contrary is true, however, if the area is sufficiently secured so as to give the tenants a justified expectation of privacy. *Garrison* v. *State,* supra, 94–95; 1 W. LaFave, supra, § 2.3 (b), p. 389

The common basement of a two-family house is an area where a tenant might expect other tenants and invited guests but would not expect deliverymen, salesmen, mailmen, policemen or trespassers. *United States* v. *Carriger,* 541 F.2d 545, 551 (6th Cir. 1976). Certainly, the basement in such a dwelling is not an area readily accessible to the public or to any significant number of people. See *Fixel* v. *Wainwright,* 492 F.2d

480, 484 (5th Cir. 1974). It is not a means of ingress or egress as is a common hallway that invites traffic and, consequently, the prying eyes and ears of strangers. *United States* v. *Holland,* 755 F.2d 253, 256 (2d Cir.), cert. denied, 471 U.S. 1125, 105 S. Ct. 2657, 86 L. Ed. 2d 274 (1985); *United States* v. *Anderson,* 533 F.2d 1210, 1214 (D.C. Cir. 1976). Absent permission or an exception to the warrant requirement, the police cannot constitutionally enter such an area without a warrant. See *United States* v. *Guarino,* 629 F. Sup. 320, 327 n.2 (D. Conn. 1986); *United States* v. *Booth,* 455 A.2d 1351, 1354 (D.C. App. 1983); 1 W. Lafave, supra. "No case has been cited to us and we have found none, holding that, absent consent or exigent circumstances, the police may make a warrantless search of a basement area closed to the public and to be used only by tenants of the building." *Garrison* v. *State,* supra, 96.

Here, the basement was secured from the outside and readily accessible only from the two apartments within the dwelling. That being the case, the tenants of those two apartments exercised considerably more control over access to the basement area than would be true in a larger, more populated building. The tenants and their families, therefore, had a reasonable expectation of privacy in the basement that might not be true of a multi-unit apartment complex. *United States* v. *Fluker,* 543 F.2d 709, 716 (9th Cir. 1976); *People* v. *Killebrew,* 76 Mich. App. 215, 218, 256 N.W.2d 581 (1977). McDonald, the police officer who conducted the search of the basement, instinctively recognized this when, after he found the shotgun, he telephoned the judge who issued the warrant to seek permission to amend it by adding the basement to the areas to be searched.

We conclude that the defendant's subjective expectation of privacy in the basement at 124-126 Read Street was reasonable and was an expectation that soci-

ety would also recognize as reasonable. Therefore, because the search that disclosed the shotgun was not authorized by a warrant, the fruit of that search, the shotgun, should have been suppressed at the defendant's trial. *Wong Sun* v. *United States,* 371 U.S. 471, 484–87, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). "[T]he Constitution sometimes insulates the criminality of a few in order to protect the privacy of us all." *Arizona* v. *Hicks,* 480 U.S. 321, 329, 107 S. Ct. 1149, 94 L. Ed. 2d 347 (1987).[5]

### III

Another of the defendant's claims of error will be addressed briefly only because it may arise in the event the state elects to retry the defendant without the availability of the suppressed shotgun as evidence, using other evidence to attempt to tie him to its possession.

The defendant claims that the trial court erred when it failed to suppress DiBenedetto's personal property and a trash bag seized by Bouchard from another trash bag located outside the defendant's bedroom door. The state claims that the evidence was admissible because

---

[5] The state relies to a great extent on *United States* v. *Holland,* 755 F.2d 253 (2d Cir.), cert. denied, 471 U.S. 1125, 105 S. Ct. 2657, 86 L. Ed. 2d 274 (1985), as did the trial court, for its position that the defendant did not have a reasonable expectation of privacy in the basement because it was a common area. *Holland* concerned the validity of a warrantless arrest in the common hallway of a two-family house. We do not believe the instant case fits within the *Holland* analysis for two reasons. First, *Holland* placed a great deal of emphasis on the fact that the defendant was arrested without a warrant in a common hallway and not in his "home" as prohibited by *Payton* v. *New York,* 445 U.S. 573, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980). *United States* v. *Holland,* supra, 255. Second, a common hallway in a two-family house is the means of ingress and egress to both apartments for visitors, deliverymen and tradesmen, among others, where one might reasonably expect to find an assortment of individuals. Id., 256. A common basement, on the other hand, is normally used as a repository of property, not an access way, and would not generate the type of outside traffic that would lead to the diminution of an expectation of privacy. See *United States* v. *Guarino,* 629 F. Sup. 320, 327 n.2. (D. Conn. 1986).

Bouchard was where he had a right to be by virtue of the search warrant, and because he inadvertently discovered the items in plain view while legitimately searching for the shotgun and sunglasses.

When the police have prior justification for an intrusion and inadvertently come across items of immediately apparent evidentiary value in plain view they may seize those items. *Texas* v. *Brown,* 460 U.S. 730, 741–43, 103 S. Ct. 1535, 75 L. Ed. 2d 502 (1983); *Washington* v. *Chrisman,* 455 U.S. 1, 7, 102 S. Ct. 812, 70 L. Ed. 2d 778 (1982); *Coolidge* v. *New Hampshire,* 403 U.S. 443, 466, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971); *United States* v. *$10,000 in U.S. Currency,* 780 F.2d 213, 217 (2d Cir. 1986). The police meet the "immediately apparent" requirement if, on discovery, they have probable cause to associate the property in plain view with criminal activity without further investigation. *Arizona* v. *Hicks,* supra, 324–27; *White* v. *State,* 729 S.W.2d 737, 740–41 (Tex. Crim. App. 1987).

When the trial court, at the conclusion of the suppression hearing, ruled on the defendant's motion to suppress the items found in the trash bag, it failed to make findings as to whether the discovery of the evidence was inadvertent or whether its evidentiary value was immediately apparent to the officer who discovered it.[6] If, therefore, the state chooses to retry the defendant on the charge of possession of a sawed-off shotgun, a new suppression hearing should be held in order that specific findings may be made regarding the application of the plain view doctrine to the items discovered in the trash bag.

There is error, the judgment is set aside and the case is remanded for a new trial.

In this opinion the other justices concurred.

---

[6] The trial court found only that Bouchard "used the least intrusive method of ascertaining the nature of that bag which was in plain view."