******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* JEAN JACQUES
## (SC 19783)

Robinson, C. J., and Palmer, McDonald, D'Auria,
Mullins, Kahn and Ecker, Js.

*Syllabus*

Convicted of the crime of murder, the defendant appealed, claiming that the trial court improperly denied his motion to suppress certain evidence discovered during a warrantless search of his apartment. The defendant had entered into a month-to-month lease for the apartment, paid the first month's rent, and moved in with all of his personal belongings. Five days into that lease, the defendant was arrested on unrelated drug charges and was unable to post bond. The defendant never returned to the apartment, and did not pay the second month's rent or ask the landlord for an extension of his lease. The defendant also never contacted his family or friends to ask them to pay his rent or to secure his personal belongings, even though he had the ability to do so. Although the landlord never commenced eviction proceedings, he entered into the apartment and removed all of the defendant's personal belongings prior to the search in question. The police subsequently received a tip indicating that the defendant had hidden the murder victim's cell phone inside of a bathroom wall in the apartment. Five days after the term of the defendant's lease expired, the police obtained written consent from the landlord to enter the apartment, conducted a warrantless search, and ultimately discovered the victim's cell phone in a hole in the bathroom wall. The defendant claimed in his motion to suppress that the cell phone was inadmissible under the exclusionary rule because the warrantless search of his apartment had violated his right to be free from unreasonable search and seizures under the federal constitution. At an evidentiary hearing on his motion, the defendant testified that the apartment was his home, the landlord had never contacted him, and he would have asked a friend to retrieve his belongings if he had been instructed to vacate the apartment. The defendant testified that his intention was to stay in the apartment for a long time, and that he never gave anyone, including the landlord, permission to enter. In denying the motion to suppress, the trial court concluded that the defendant did not meet his burden of demonstrating that he had a subjective expectation of privacy in the apartment at the time of the search. In reaching its conclusion, the trial court relied on the expiration of the lease before the search, the nonpayment of rent, and the fact that the defendant had not asked his family or friends to maintain the apartment or his personal belongings contained therein while he was incarcerated. On appeal from the judgment of conviction, *held* that the trial court improperly denied the defendant's motion to suppress, and, accordingly, the judgment of conviction was reversed and the case was remanded for a new trial: this court's scrupulous review of the record led it to conclude that the trial court's determination that the defendant did not have a subjective expectation of privacy in the apartment at the time of the search was not supported by the substantial evidence and, therefore, was clearly erroneous, as the record was devoid of any evidence that the defendant affirmatively had intended to relinquish his expectation of privacy in the apartment, and the defendant's incarceration and his failure to pay rent five days past the due date, without more, were insufficient to divest him of that expectation; moreover, the defendant's subjective expectation of privacy was objectively reasonable in light of, inter alia, a statutory (§ 47a-15a) nine day grace period for the nonpayment of rent that had not yet lapsed before the search in question, the lack of formal eviction proceedings, and the fact that the defendant's absence was due solely to his incarceration; furthermore, because the state did not advance any claim that the admission of the evidence discovered during the challenged search was harmless, this court declined to address whether the defendant's conviction could be upheld on that ground.

(*Two justices concurring separately in one opinion*)

Argued October 17, 2018—officially released July 16, 2019

*Procedural History*

Substitute information charging the defendant with the crime of murder, brought to the Superior Court in the judicial district of New London, where the court, *Jongbloed, J.*, denied the defendant's motion to suppress certain evidence; thereafter, the case was tried to the jury before *Jongbloed, J.*; verdict and judgment of guilty, from which the defendant appealed to this court. *Reversed*; *new trial*.

*S. Max Simmons*, assigned counsel, for the appellant (defendant).

*David J. Smith*, senior assistant state's attorney, with whom, on the brief, was *Michael L. Regan*, state's attorney, for the appellee (state).

*Opinion*

MULLINS, J. After a jury trial, the trial court convicted the defendant, Jean Jacques, of murdering the victim, Casey Chadwick, in violation of General Statutes § 53a-54a. The defendant now appeals from that conviction. The subject of this appeal is the trial court's denial of his motion to suppress incriminating evidence linking him to the murder, which the police obtained from a search of his apartment without a warrant. The defendant had a month-to-month lease for the apartment and had paid only the first month's rent. Five days into that lease, the defendant was arrested for certain drug offenses and, shortly thereafter, the murder of the victim. The defendant never posted bond or made any arrangements to pay for a second month of rent.

Five days after his rent was due for a second month, the police searched his apartment without a warrant and discovered the victim's cell phone hidden in a bathroom wall. The defendant moved to suppress that evidence on the ground that the search violated his right to be free from unreasonable searches and seizures under the fourth amendment to the United States constitution.[1] In denying his motion to suppress, the trial court explained that the defendant had failed to "maintain the apartment as his own" because the lease had expired, the defendant had not made any further rent payments, and the defendant did not make arrangements to secure his belongings in the apartment. Thus, the court concluded that the defendant did not have a subjective expectation of privacy in the apartment at the time of the search.

The question before us is whether the trial court properly denied the defendant's motion to suppress on the ground that he did not have a subjective expectation of privacy in the apartment at the time of the search. We conclude that, under the specific facts of this case, the defendant established that the apartment was his home and that neither his incarceration nor his failure to pay rent five days after it was due divested him of his subjective expectation of privacy in his apartment. Therefore, we further conclude that the trial court improperly denied the defendant's motion to suppress and, accordingly, reverse the judgment of the trial court.

The following undisputed facts and procedural history are relevant to our analysis. On January 16, 2015, the defendant was released from incarceration to supervised parole.[2] Upon being released, he lived with a friend until June 10, 2015. On that date, the defendant secured his own apartment in Norwich. He entered into a month-to-month tenancy and paid the landlord $450 for the first month of rent, which ran from June 10 to July 10, 2015. After securing the apartment, the defendant moved all of his belongings into the apartment and began living there.

On June 15, 2015, the defendant was arrested on drug charges unrelated to this case. At the time of his arrest, the police noticed blood on his sneakers. That same day, police officers discovered the body of the victim stuffed into a closet in her apartment. She had been stabbed multiple times. Subsequent forensic testing indicated that some of the blood on the defendant's shoes had come from the victim.[3]

The following day, on June 16, 2015, the police, accompanied by the defendant's parole officer, searched the defendant's apartment. Inside, they discovered blood on the walls and a mattress. Forensic testing indicated that this blood came from the defendant, who had various cuts on his hands. The defendant was subsequently arrested for the murder of the victim while he was incarcerated on the drug charges.

While the defendant was in jail on the pending drug and murder charges, the police received a tip from a confidential informant that the defendant had hidden the victim's cell phone and some drugs in a hole in the wall of the bathroom of his apartment. As a result, on July 15, 2015, police officers conducted a second search of the defendant's apartment in order to investigate whether there was a hole in the bathroom wall. This time, the officers were not accompanied by the defendant's parole officer. Instead, the officers went to the apartment alone and without a warrant. They obtained written consent from the landlord to search the apartment. After obtaining that consent, the officers entered the defendant's apartment and confirmed the presence of a hole in the bathroom wall with a bag inside of it. Inside the bag, the officers found the victim's cell phone and some drugs.[4]

Prior to trial, the defendant filed a motion to suppress the victim's cell phone and the drugs, asserting that this evidence was inadmissible under the exclusionary rule as the fruit of prior police illegality. An evidentiary hearing on the motion was held during which both parties presented evidence related to the defendant's lease of the apartment and the contested search.

In its memorandum of decision on that motion, the trial court made the following explicit findings of fact. The defendant had entered into a month-to-month lease for the apartment and paid rent for the first month. Five days into his lease, on June 15, 2015, he was arrested on the drug charges. His bond was set at $100,000, which he was not able to post. While incarcerated on the drug charges, he was arrested for the murder of the victim, and his bond was increased to $1 million. He did not post that bond either. Thus, the defendant was incarcerated and never returned to the apartment following his arrest on June 15, 2015. The defendant did not make any further rent payments for any period beyond the first month. Nor did the defendant contact

the landlord or attempt to have his lease extended. Despite having the ability to do so, the defendant also did not contact his friends or family to ask them to pay his rent. The trial court also found that the search at issue occurred on July 15, 2015, five days after the date of expiration of the lease term. Despite not receiving rent for a second month, the landlord did not initiate eviction proceedings. In fact, the court credited the landlord's testimony that, if the defendant had been released from jail in July and had the money to pay his rent, the landlord would have permitted him to continue to stay in the apartment.

On the basis of these findings, the court determined that the defendant did not show an interest in the apartment and, thus, did not meet his burden of demonstrating a subjective expectation of privacy in it at the time of the second search. In making that determination, the court considered that the lease had expired five days before the second search occurred, the defendant neither made any further rent payment nor any arrangements to have his rent paid, and the defendant made no effort to "maintain the apartment as his own." The trial court further explained that, even though the defendant had been incarcerated, he could have exhibited some interest in the apartment by asking his family or friends to maintain the apartment or the personal belongings within it. The court acknowledged the defendant's testimony that he would have gone back to the apartment if he had been released from jail. It determined, however, that his expressing this view many months later did not rise to the level of exhibiting an actual subjective expectation of privacy in the apartment.

The trial court denied the defendant's motion to suppress, and, following a nine day trial, the jury returned a verdict of guilty on the charge of murder. The trial court subsequently rendered judgment in accordance with that verdict and sentenced the defendant to sixty years incarceration. This appeal followed. Additional facts will be set forth below as necessary.

On appeal, the defendant asserts that the trial court improperly denied his motion to suppress the evidence obtained during the second search of his apartment, which occurred on July 15, 2015.[5] Specifically, he claims that he had a reasonable expectation of privacy in the apartment because it was his home and he had never been evicted from it or otherwise abandoned it. We agree with the defendant.

We begin by setting forth the relevant principles of law and the standard of review governing the defendant's claim. "The fourth amendment to the United States constitution . . . provides that [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." (Internal quotation marks omitted.) *State* v.

*Saturno*, 322 Conn. 80, 88, 139 A.3d 629 (2016). "The capacity to claim the protection of the fourth amendment does not depend upon a property interest, permanency of residence, or payment of rent but upon whether the person who claims fourth amendment protection has a reasonable expectation of privacy in the invaded area." *State* v. *Reddick*, 207 Conn. 323, 330, 541 A.2d 1209 (1988); see id., 329 ("[a] person is entitled to fourth amendment protection anywhere he resides where he has a reasonable expectation of privacy"); see also *Rakas* v. *Illinois*, 439 U.S. 128, 143, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978); *Katz* v. *United States*, 389 U.S. 347, 361, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967) (Harlan, J., concurring).

"To receive fourth amendment protection against unreasonable searches and seizures, a defendant must have a legitimate expectation of privacy in the [subject of the search]. . . . Absent such an expectation, the subsequent police action has no constitutional ramifications." (Internal quotation marks omitted.) *State* v. *Pink*, 274 Conn. 241, 258, 875 A.2d 447 (2005). To determine whether a defendant has a reasonable expectation of privacy in an invaded place, we follow the test laid out by the United States Supreme Court in *Katz* v. *United States*, supra, 389 U.S. 347. "The *Katz* test has both a subjective and an objective prong: (1) whether the [person contesting the search] manifested a subjective expectation of privacy with respect to [the invaded premises or seized property]; and (2) whether that expectation [is] one that society would consider reasonable. . . . This determination is made on a case-by-case basis. . . . The burden of proving the existence of a reasonable expectation of privacy rests [with] the defendant." (Internal quotation marks omitted.) *State* v. *Houghtaling*, 326 Conn. 330, 341, 163 A.3d 563 (2017), cert. denied,      U.S.     , 138 S. Ct. 1593, 200 L. Ed. 2d 776 (2018).

It is well settled that "[w]hen reviewing a trial court's denial of a motion to suppress, [a] finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]hen a question of fact is essential to the outcome of a particular legal determination that implicates a defendant's constitutional rights . . . and the credibility of witnesses is not the primary issue, our customary deference to the trial court's factual findings is tempered by a scrupulous examination of the record to ascertain that the trial court's factual findings are supported by substantial evidence. . . . [When] the legal conclusions of the court are challenged, [our review is plenary, and] we must determine whether they are legally and logically correct and whether they find support in the facts set out in the [trial court's] memorandum of decision . . . ." (Internal quotation marks omitted.) Id., 339–40.

"Notwithstanding our responsibility to examine the record scrupulously, it is well established that we may not substitute our judgment for that of the trial court when it comes to evaluating the credibility of a witness. . . . We must defer to the trier of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) *State v. DeMarco*, 311 Conn. 510, 519–20, 88 A.3d 491 (2014).

In the present case, the trial court's factual finding that the defendant had no subjective expectation of privacy in the apartment at the time of the search implicates the defendant's constitutional rights. Thus, we undertake a scrupulous review of the record to determine whether the trial court's finding is supported by substantial evidence in the record. See, e.g., id.

A review of the record reveals the following. At the suppression hearing, the defendant testified that the apartment was his "home."[6] He explained that, after verbally entering into a lease and paying his first month of rent on June 10, 2015, he moved all of his personal belongings into the apartment and began living there. He was living there when he was arrested and incarcerated five days later. When he missed his rent payment for the next month, he did not make arrangements to have his belongings removed from the apartment because he did not think that his landlord would kick him out for not paying rent.

He also expressed his uncertainty as to whether his lease had expired at the time of the search on July 15, 2015.[7] In the five days preceding the search in which the defendant's rent payment was overdue, the landlord neither contacted him nor gave him any reason to believe that he had to vacate the apartment. The defendant testified that, if his landlord had told him that he needed to leave the apartment, he would have contacted a friend to remove his belongings from the premises, but the landlord never did so. He stated that it was his intention to stay in the apartment for a long time. He also stated that he had a key to the apartment and did not give permission for anyone, including the landlord, to enter.

While the defendant acknowledged that he knew he might be incarcerated for a long time and made no attempt to contact his landlord when rent became due for a second month, he testified that he thought he could easily talk to the landlord and get his apartment when he got out of jail. When testifying about his expectations with regard to the apartment in the event that he was released from jail, the defendant stated that "I . . . think about when I get out, this is where I'm going . . . where I'm going [to] go."[8]

The landlord also testified at the suppression hearing, and his testimony supported the defendant's contention

that he had a subjective expectation of privacy in the apartment. The landlord testified that he never communicated to the defendant in any way that he had to leave the apartment. He made no attempt to get the keys back from the defendant prior to the time of the search. Nor did he commence eviction proceedings. Although he never notified the defendant, prior to the search, the landlord took it upon himself to put all of the defendant's personal belongings in bags and remove them from the apartment.

We are aware that the first prong of *Katz* focuses on the defendant's actions and beliefs as opposed to those of the landlord. Nevertheless, we find it significant that the landlord's conduct supports the defendant's testimony that he actually believed he had a privacy right in the apartment at the time of the search. The defendant heard nothing from the landlord suggesting that he was in danger of losing the apartment or his possessions therein.[9] Cf. *United States* v. *Miller*, 387 Fed. Appx. 949, 951–52 (11th Cir. 2010) (concluding that defendant could not have subjective expectation of privacy where defendant knew property manager would give him only three weeks to remove belongings if he failed to pay rent, and search occurred after three week period elapsed).

A scrupulous examination of the record reveals that the trial court's determination that the defendant did not have a subjective expectation of privacy in his apartment at the time of the search is not supported by substantial evidence. Instead, the evidence demonstrates that the apartment was the defendant's home and that he, therefore, had an expectation of privacy in the apartment. The record shows that, the defendant entered into a month-to-month lease and paid for the first month. He was given the keys to the apartment, moved all of his possession into the place, and testified that he never gave anyone, including the landlord, permission to enter. See, e.g., *State* v. *Reddick*, supra, 207 Conn. 331–32 (holding that defendant had legitimate expectation of privacy in mother's apartment when defendant had key). He also expressly testified that the apartment was his home, and the landlord's behavior was consistent with that belief. Even though the defendant was five days late on his second rent payment in this month-to-month lease, the landlord did not initiate any eviction proceedings.

Neither the fact that the defendant was overdue on his rent nor the fact that he was incarcerated during his tenancy is sufficient, without more, for the defendant to have lost his subjective expectation of privacy in his apartment. Indeed, the failure to pay rent, on its own, does not result in the loss of one's expectation of privacy. See *United States* v. *Robinson*, 430 F.2d 1141, 1143–44 (6th Cir. 1970); *Browning* v. *State*, 176 Ga. App. 420, 422, 336 S.E.2d 41 (1985); *State* v. *Hodges*, 287

N.W.2d 413, 415 (Minn. 1979); *State* v. *Clark*, 105 N.M. 10, 13, 727 P.2d 949 (App.), cert. denied, 104 N.M. 702, 726 P.2d 856 (1986). Similarly, the defendant's incarceration and subsequent absence from the apartment did not, without more, result in the loss of his expectation of privacy. See *United States* v. *Robinson*, supra, 1143; *Browning* v. *State*, supra, 422; *State* v. *Hodges*, supra, 415; *State* v. *Clark*, supra, 952.

The trial court faulted the defendant for not exhibiting any interest in the apartment and for failing to "maintain the apartment as his own." We construe this as an abandonment analysis. In such an analysis, however, the burden of proof is not placed on the defendant to show that he maintained his privacy interest but, rather, on the state to show "an element of conduct manifesting [an] intent to relinquish an expectation of privacy in the [item or area searched]." (Internal quotation marks omitted.) *State* v. *Jackson*, 304 Conn. 383, 396, 40 A.3d 290 (2012); see also *United States* v. *Brazel*, 102 F.3d 1120, 1147–48 (11th Cir.) (explaining that defendant bears burden of proving legitimate expectation of privacy in area searched, and government has burden of proving abandonment), cert. denied, 522 U.S. 822, 118 S. Ct. 79, 139 L. Ed. 2d 37 (1997).

Moreover, abandonment "must be established by clear and unequivocal evidence." *United States* v. *Harrison*, 689 F.3d 301, 307 (3d Cir. 2012), cert. denied, 568 U.S. 1242, 133 S. Ct. 1616, 185 L. Ed. 2d 602 (2013). To show that the defendant abandoned his expectation of privacy in his apartment, the law generally requires affirmative conduct on the part of the defendant. See, e.g., *United States* v. *Stevenson*, 396 F.3d 546, 544 (4th Cir.) (defendant showed intent to relinquish his privacy interest in apartment while he was incarcerated by writing letter to his girlfriend in which he gave her all of his personal belongings and referred to himself as "former renter"), cert. denied, 544 U.S. 1067, 125 S. Ct. 2534, 161 L. Ed. 2d 1122 (2005); see also *United States* v. *Ruiz*, 664 F.3d 833, 841 (10th Cir. 2012) (defendant sent letter to his landlord stating he would no longer be renting home and she could keep all of his furniture).

In the present case, the record is devoid of any evidence demonstrating that the defendant affirmatively intended to relinquish his expectation of privacy in his apartment. He neither expressed to his landlord that he no longer wanted the apartment nor expressed to anyone else an intention to abandon his possessions. Failure to make arrangements for the security of his possessions a mere five days after his rent was due is not evidence that he intended to relinquish his expectation of privacy in his apartment. Rather, the defendant's conduct was consistent with his stated belief that his possessions were secure and that he was not in danger of losing his apartment five days after the rent was due.

On the basis of the foregoing, we conclude that, under

the specific facts of this case, the trial court's finding that the defendant lacked a subjective expectation of privacy in the apartment at the time of the search is not supported by substantial evidence and, thus, is clearly erroneous. Instead, we conclude that the defendant met his burden of showing that he had a subjective expectation of privacy in the apartment at the time of the search.

Having concluded that the defendant satisfied his burden of proving that he had a subjective expectation of privacy in the apartment, we must now consider the second prong of the *Katz* test, namely, whether that expectation was reasonable, as measured by society's values, at the time of the search. See *Katz* v. *United States*, supra, 389 U.S. 361 (Harlan, J., concurring). This is a question of law over which our review is plenary. See, e.g., *United States* v. *Stevenson*, supra, 396 F.3d 545.

"A reasonable expectation of privacy is one that is legitimate." (Internal quotation marks omitted.) *State* v. *Zindros*, 189 Conn. 228, 239, 456 A.2d 288 (1983), cert. denied, 465 U.S. 1012, 104 S. Ct. 1014, 79 L. Ed. 2d 244 (1984). "The test of legitimacy is not whether the individual chooses to conceal assertedly private activity. Rather, the correct inquiry is whether the government's intrusion infringes upon the personal and societal values protected by the [f]ourth [a]mendment." (Footnote omitted; internal quotation marks omitted.) *Oliver* v. *United States*, 466 U.S. 170, 182–83, 104 S. Ct. 1735, 80 L. Ed. 2d 214 (1984).

"Legitimate expectations of privacy derive from concepts of real or personal property law or [from] understandings that are recognized and permitted by society. One of the main rights attaching to property is the right to exclude others . . . and one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of this right to exclude." (Citation omitted; internal quotation marks omitted.) *State* v. *Hill*, 237 Conn. 81, 94 n.19, 675 A.2d 866 (1996); see also *Rakas* v. *Illinois*, supra, 439 U.S. 144 n.12. "Of course, one need not have an 'untrammeled power to admit and exclude' in order to claim the protection of the fourth amendment, so long as the place involved is one affording an expectation of privacy that society regards as reasonable." *State* v. *Hill*, supra, 94 n.19; see also *State* v. *Mooney*, 218 Conn. 85, 95–96, 588 A.2d 145, cert. denied, 502 U.S. 919, 112 S. Ct. 330, 116 L. Ed. 2d 270 (1991).

Moreover, it is well established that "a home is a place in which a subjective expectation of privacy virtually always will be legitimate . . . ." *California* v. *Ciraolo*, 476 U.S. 207, 220, 106 S. Ct. 1809, 90 L. Ed. 2d 210 (1986) (Powell, J., dissenting); see also 1 W. LaFave, Search and Seizure (5th Ed. 2012) § 2.3, p. 724 ("one's dwelling has generally been viewed as the area most resolutely protected by the [f]ourth [a]mendment"). Thus, "even

under the *Katz* [justified expectation of privacy] approach, it is . . . useful to view residential premises as a place especially protected against unreasonable police intrusion." 1 W. LaFave, supra, § 2.3, p. 725; see *Payton* v. *New York*, 445 U.S. 573, 586, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980) ("[i]t is a basic principle of [f]ourth [a]mendment law that searches and seizures inside a home without a warrant are presumptively unreasonable" [internal quotation marks omitted]); see also *State* v. *Fausel*, 295 Conn. 785, 793, 993 A.2d 455 (2010).

Because the trial court determined that the defendant did not have a subjective expectation of privacy in the apartment at the time of the search, it did not reach the issue of whether the expectation was reasonable. It noted, however, that it would have concluded that the expectation was not one that society would consider reasonable. The court reasoned that the defendant's tenancy had expired prior to the search and that the defendant failed to comply with General Statutes § 47a-16a, which requires a tenant to notify his landlord of any anticipated absence from the leased premises.[10]

The defendant contends, however, that the trial court failed to consider other portions of Connecticut's landlord tenant statutes, such as those concerning summary process, that are equally relevant to the issue of reasonableness. In particular, the defendant directs our attention to several specific statutory provisions. See General Statutes § 47a-11b (a) (providing that abandonment of premises by occupant means occupant has left premises without notice to landlord as evidenced by removal of all personal belongings from premises and either nonpayment of more than two months of rent or express statements by occupant of intention to leave); General Statutes § 47a-15a (providing nine day grace period before landlord may terminate month-to-month lease for nonpayment of rent); General Statutes § 47a-23 (providing requisite steps for landlord to follow to formally initiate eviction proceedings).

We recognize that property law concepts do not necessarily control our fourth amendment inquiry. They are, however, "clearly a factor to be considered." *United States* v. *Salvucci*, 448 U.S. 83, 91, 100 S. Ct. 2547, 65 L. Ed. 2d 619 (1980); see also *United States* v. *Fields*, 113 F.3d 313, 320 (2d Cir.) ("a defendant's property or possessory interest in the place searched is a factor generally considered in determining the reasonableness of a defendant's expectation of privacy"), cert. denied, 522 U.S. 976, 118 S. Ct. 434, 139 L. Ed. 2d 334 (1997); *State* v. *Houghtaling*, supra, 326 Conn. 346 n.10, 348–49 (considering defendant's property interest in fourth amendment analysis and explaining that "property rights may be the beginning and the end of a fourth amendment analysis when the police have physically intruded on a person's residence").

In the present case, the trial court made a finding that the landlord did not initiate formal eviction proceedings as required by statute. See General Statutes §§ 47a-23 through 47a-23b.[11] Moreover, the search occurred before the nine day statutory grace period for payment of rent had elapsed. See General Statutes § 47a-15a.[12] Thus, at the time of the search, the defendant had a legal right to occupy the premises and exclude others, notwithstanding his failure to pay rent.[13] See, e.g., *State* v. *Johnson*, 110 Idaho 516, 523, 716 P.2d 1288 (1986) (concluding that defendant had legitimate and reasonable expectation of privacy in premises and that defendant was "entirely justified in expecting his landlord to resort to the eviction procedures required by law rather than resorting to self-help in seeking rent payment if he was in fact behind in his rent"); *State* v. *Dennis*, 182 Ohio App. 3d 674, 683–84, 914 N.E.2d 1071 (2009) (holding that defendant had reasonable expectation of privacy in apartment where defendant received multiple eviction notices, but legal procedures for eviction had not yet been completed); see also *United States* v. *Botelho*, 360 F. Supp. 620, 626 (D. Haw. 1973) (concluding that court was "not prepared to hold that a defendant with a perfectly legal right to possession or occupancy of leased premises can be found to have an 'unreasonable' expectation of privacy").

The very existence of the statutory landlord tenant scheme in Connecticut is significant in our analysis for objective standards in this context. "[S]tatutes may . . . help to define the contours of constitutional rights . . . . Because [l]egislative enactments are expressions of this state's public policy . . . they may be relevant to the resolution of whether the defendant's expectation of privacy is one that Connecticut citizens would recognize as reasonable." (Citations omitted; internal quotation marks omitted.) *State* v. *Bernier*, 246 Conn. 63, 72–73, 717 A.2d 652 (1998). Indeed, this court previously has "considered the presence of state regulation in determining whether a defendant's expectation [of privacy] was one that Connecticut citizens would consider reasonable . . . ." Id., 73; see also id., 73–74 (looking to statutory scheme regarding fire investigations in order to determine reasonableness of defendant's privacy expectations in flooring samples taken from his home); *State* v. *DeFusco*, 224 Conn. 627, 636–38, 620 A.2d 746 (1993) (considering existence of statutes regulating garbage collection, recycling, and disposal informative to issue of reasonableness of defendant's expectation of privacy in garbage).

This state, as well as every other state in the nation, has a comprehensive statutory scheme in place detailing the process through which a landlord may retake possession of leased property from a tenant. See 2 Restatement (Second), Property, Landlord and Tenant § 14.1, note 1, p. 3 (1977). The existence of these statutes

demonstrate that society expects landlords to follow the mandatory legal processes in order to lawfully retake possession of a premises, which, in turn, indicates to us that a tenant's expectation of privacy is valid, or at least reasonable, until the time that the landlord complies with the statutory procedure and regains the right of possession. In this case, the defendant's landlord did not even begin to pursue the legal statutory process. Thus, we conclude that it was reasonable for the defendant to have believed that he had the right to privacy in his apartment a mere five days after rent was due.

The state contends that the defendant's failure to pay or arrange for the payment of rent demonstrates his lack of any reasonable expectation of privacy. As we explained previously, the nonpayment of rent, by itself, does not divest a tenant of his expectation of privacy in the premises. See 79 C.J.S., Searches and Seizures § 32 (2019) ("the tenant of leased premises may maintain an expectation of privacy . . . after the termination of the tenancy, and this is so even if the tenant falls behind in [his] obligation to pay rent" [footnote omitted]); see also *United States* v. *Washington*, 573 F.3d 279, 284–85 (6th Cir. 2009) (reasoning that, "[i]f a landlord's unexercised authority over a lodging with overdue rent alone divested any occupant of a reasonable expectation of privacy, millions of tenants . . . would be deprived of [f]ourth [a]mendment protection," and concluding that "paying late is a common occurrence . . . and [thus, there is no merit to] the notion that the [c]onstitution ceases to apply in these circumstances"); *United States* v. *Botelho*, supra, 360 F. Supp. 625 (concluding that nonpayment of rent alone is insufficient to deem defendant's expectation of privacy in home unreasonable because "[t]o hold otherwise would abolish the protections of the [f]ourth [a]mendment for a potentially large group of persons renting homes and apartments" [internal quotation marks omitted]); *State* v. *Taggart*, 7 Or. App. 479, 482–84, 491 P.2d 1187 (1971) (concluding that defendant had reasonable expectation of privacy in premises where he failed to pay rent, search occurred before five day grace period expired, and landlord had not initiated eviction proceedings).

To be clear, a tenant may, under certain circumstances, lose an expectation of privacy in his leasehold even before he loses his legal right of possession under applicable law, and nonpayment of rent may be one factor in arriving at that determination. See *United States* v. *Stevenson*, supra, 396 F.3d 547 (any expectation defendant had in apartment was unreasonable where defendant fell behind on rent payments prior to becoming incarcerated, disposed of all of his belongings, and referred to himself as "former renter" of apartment); *United States* v. *Hoey*, 983 F.2d 890, 891–93 (8th Cir. 1993) (holding that defendant had no reasonable expectation of privacy in apartment where defendant

was six weeks late on rent, defendant told landlord she was leaving and held moving sale, and neighbor saw defendant leave).

We also consider the length of time that elapsed after rent was due and before the contested search took place. The defendant's rent was due on July 10, 2015, and the search took place on July 15, 2015. Importantly, the defendant was only five days overdue on his rent at the time of the search. While we recognize that there are limits as to how far in arrears in the payment of rent a defendant may become before his privacy expectation becomes unreasonable, we do not need to define what those limits are under the facts of the present case. Instead, we conclude that, given the record before us, the fact that the defendant's rent was five days overdue is not sufficient to render his expectation of privacy in the apartment unreasonable. See, e.g., *People* v. *Sedrel*, 184 Ill. App. 3d 1078, 1081, 540 N.E.2d 792 (acknowledging that defendant's rent was only three days overdue at time of search, which was insufficient time for landlord to believe that defendant had abandoned apartment), appeal denied, 127 Ill. 2d 636, 545 N.E.2d 126 (1989).

Indeed, in the present case, the landlord testified that, had the defendant shown up at the apartment on the day of the search and been able to pay rent, the landlord would have let him stay. Moreover, as we explained previously, § 47a-15a provides tenants with a nine day grace period in which to pay overdue rent, thus suggesting that five days is within the amount of time that society would consider reasonable for a defendant to believe that he has an expectation of privacy in his home notwithstanding the failure to pay the next month's rent. See footnote 12 of this opinion.

Aside from property law concepts, other factors aid our analysis of whether the defendant's privacy expectation was reasonable. "Absence due to arrest and incarceration while awaiting trial is not of itself a sufficient basis upon which to conclude that the accused has abandoned any reasonable expectation of privacy in his home. To hold otherwise would make permissible warrantless searches of the homes of those awaiting trial and unable to post bond." *Commonwealth* v. *Strickland*, 457 Pa. 631, 637, 326 A.2d 379 (1974); see also *United States* v. *Robinson*, supra, 430 F.2d 1143 (rejecting government's argument that defendant's absence from apartment indicates relinquishment of privacy rights when absence was due to incarceration); *Browning* v. *State*, supra, 176 Ga. App. 422 (concluding defendant maintained reasonable expectation of privacy in apartment despite being in jail and failing to pay rent). In the present case, the defendant was living at the apartment at the time he was arrested. His absence from the apartment was solely a result of his incarceration. Further, the defendant's rent, which was

only five days late at the time of the search, came due only *after* he became incarcerated. On the basis of the foregoing, we cannot conclude that, under the facts of the present case, the defendant did not have a reasonable expectation of privacy in the apartment at the time of the search.[14]

Because we conclude that the defendant had a reasonable expectation of privacy in the apartment at the time of the search, we conclude that the trial court improperly denied the defendant's motion to suppress.

On appeal, the state does not claim that, in the event this court determines that the trial court improperly denied the defendant's motion to suppress, any error was harmless. Thus, we have no occasion to address whether the error here was harmless. See, e.g., *State* v. *Kirby*, 280 Conn. 361, 387, 908 A.2d 506 (2006) (acknowledging that state did not argue that violation of defendant's confrontation rights was harmless error and reversing judgment of trial court).

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other justices concurred.

[1] The fourth amendment's protections against unreasonable searches and seizures are made applicable to the states through the due process clause of the fourteenth amendment to the United States constitution. See *Mapp* v. *Ohio*, 367 U.S. 643, 655, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961).

[2] The defendant had been incarcerated following a judgment of conviction in 1997 on the charges of attempted murder and carrying a pistol without a permit.

[3] The state also presented testimonial evidence placing the defendant in the victim's apartment on the night of the murder. Additionally, forensic testing indicated that the victim's blood was on certain articles of defendant's clothing found inside of his gym bag, and that the defendant's blood was in the victim's living room and kitchen.

[4] After the officers confirmed the existence of the hole in the wall, they secured the apartment and obtained a warrant to search the inside of the bag.

[5] The defendant also filed a motion to suppress evidence obtained as a result of the first search that occurred on June 16, 2015, which was denied by the trial court. The court reasoned that, because the defendant was on parole at the time of that search, his parole officer, who was present during the search, had authority to conduct the search. The defendant does not challenge the trial court's decision regarding the first search on appeal.

Significantly, the state does not make the same argument on appeal regarding the second search. The state explained that it did not attempt to justify the second search on the basis of the defendant's status as a parolee because the state could not definitively determine what the defendant's parole status was at the time of the second search. Because of that uncertainty, the state represented to this court at oral argument that it was not attempting to justify the second search on the basis that the defendant had a reduced expectation of privacy as a parolee. Because the state has made no such claim, and in fact expressly disclaimed any reliance on the notion that this search could be justified on the basis of the defendant's status as a parolee, we have no occasion to address that issue as an alternative basis upon which the second search could be justified.

[6] The state asserts in its brief that the defendant never expressly indicated that the apartment was his home. The following exchange belies that assertion:

"[The Prosecutor]: Was [the apartment], was that your home?

"[The Defendant]: Yes."

[7] The following colloquy took place during the state's cross-examination of the defendant:

"[The Prosecutor]: In July of 2015, your lease had run, correct? Your rental agreement was over, correct?

"[The Defendant]: I don't know. I don't know . . . that."

After an objection by defense counsel on the ground that the question was a legal one, which was overruled by the court, the following exchange occurred:

"[The Prosecutor]: Had it run?

"[The Defendant]: I don't know about that."

[8] We note that, in its memorandum of decision, the trial court does not expressly discredit any portion of the defendant's testimony. It does, however, state that, "[a]lthough the defendant testified that he would have gone back to [the apartment] if he were released [from jail] in July, 2015, [t]he subjective test does not rest on the absolute subjective perception of the individual defendant. . . . Expressing a view, many months later, that he would have gone back if he could, does not rise to the level of exhibiting an actual subjective expectation of privacy in a location." (Citations omitted; internal quotation marks omitted.) Because the trial court did not expressly discredit the defendant's testimony, we consider it in our analysis. See *State* v. *Edmonds*, 323 Conn. 34, 39, 145 A.3d 861 (2016) (under a more probing review of constitutional issue, this court takes into account testimony that was not expressly discredited by trial court); see also *State* v. *DeMarco*, supra, 311 Conn. 520.

[9] This court recently had occasion to address the first prong of the *Katz* test and clarified that, when determining whether a defendant has a subjective expectation of privacy in property that is not his residence, it is appropriate to examine the record for conduct demonstrating an intent to preserve something as private and free from knowing exposure to the view of others. See *State* v. *Houghtaling*, supra, 326 Conn. 348. In that case, this court concluded that the owner of property who did not reside there, but instead rented it to a tenant, did not have a subjective expectation of privacy in the property because he failed to adduce evidence sufficient to establish his intent to keep the property private. Id. Because the evidence in the present case established that the apartment was the defendant's residence, we find *Houghtaling* to be distinguishable from the present case.

[10] General Statutes § 47a-16a provides in relevant part: "[T]he tenant shall be required to notify the landlord of any anticipated extended absence from the premises . . . ."

[11] General Statutes §§ 47a-23 through 47a-23b require, *inter alia*, that landlords first provide each lessee or occupant of the premises with advance written notice to quit, which then provides proper basis for a summary process action upon service.

[12] General Statutes § 47a-15a provides in relevant part: "If rent is unpaid when due and the tenant fails to pay rent within nine days thereafter . . . the landlord may terminate the rental agreement *in accordance with the* [*summary process provisions*]." (Emphasis added.)

[13] We note that the landlord could not have initiated eviction proceedings on the basis of nonpayment of rent until the statutory grace period had lapsed. See General Statutes § 47a-23 (a) ("[w]hen the owner . . . desires to obtain possession or occupancy of . . . any apartment . . . and (1) when a rental agreement or lease of such property . . . terminates [due to] . . . (D) nonpayment of rent within the grace period . . . such owner . . . shall give notice to each lessee or occupant to quit possession or occupancy of such . . . apartment"); see also *Kligerman* v. *Robinson*, 140 Conn. 219, 222, 99 A.2d 186 (1953) ("While the tenant's nonpayment of rent did not automatically terminate the lease, his failure to make a tender for the months of September and October entitled the landlord to end the tenancy by some unequivocal act. . . . That act . . . was the service of the notice to quit." [Citation omitted.]). Thus, the defendant's right of possession could not have ended until a notice to quit was served.

[14] Although the argument in its brief is not entirely clear, the state raises the claim that the police had consent to search the apartment. With respect to this issue, in its memorandum of decision, the trial court stated that, "[i]n this case, not only did the defendant lack any actual subjective expectation of privacy in the apartment, but also the police entered the apartment after the expiration of the month-to-month tenancy, with permission from the landlord, who signed a formal consent to search and who opened the door for them." We do not conclude—and more importantly, the state has not argued—that this determination by the trial court amounted to a finding that the warrantless search was justified because the police had obtained the consent of the landlord. Indeed, the state does not argue that any exception to the warrant requirement applies here. Rather, the state appears to argue that, because the defendant had no expectation of privacy, the

landlord was the proper authority to consent to a search of the now vacant apartment. Similarly, we read the trial court's decision on consent the same way.

To be sure, because the trial court's determination that the landlord had authority to consent to the search was premised on its conclusion that, because the defendant did not have an expectation of privacy in the apartment, there was no violation of fourth amendment rights that the defendant would have had standing to assert. In light of our conclusions to the contrary, the landlord's authority to consent to the search was restricted by the general rule of law prohibiting such consent. *Chapman* v. *United States*, 365 U.S. 610, 616–17, 81 S. Ct. 776, 5 L. Ed. 2d 828 (1961) (landlord does not retain right to enter rented premises for purpose of conducting search during term of tenancy, even when tenant may be temporarily absent, or have authority to grant consent to police to enter and to search). Therefore, the landlord's consent in the present case was not a valid justification for the warrantless search of the defendant's home.

---